UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY ADAMS,

                              Plaintiff,

       v.

ANTHONY ANNUCCI, *Acting
Commissioner DOCCS*,

                              Defendant.

No. 17-CV-3794 (KMK)

OPINION AND ORDER

Appearances:

Jerry Adams
Sonyea, NY
*Pro Se Plaintiff*

Kara F. Sweet, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Pro se Plaintiff Jerry Adams ("Plaintiff") filed the instant Complaint ("Complaint"),

pursuant to 42 U.S.C. § 1983, against Acting Commissioner of the New York Department of

Corrections and Community Supervision ("DOCCS") Anthony Annucci ("Defendant"). (Compl.

(Dkt. No. 1).)[1]  Plaintiff alleges that Defendant violated his rights under the Fifth, Eighth, and

Fourteenth Amendments by creating or implementing a policy which requires Plaintiff either to

_____

       [1] The Complaint does not specify whether Defendant is sued in his official or individual
capacity.  To the extent Plaintiff seeks damages against Defendant in his official capacity, his
suit is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169–70
(1985) (explaining that the Eleventh Amendment bars a damages action against State officials
sued in their official capacity).

join a treatment program and admit guilt for a crime for which he maintains his innocence, or to lose his "Good Time Credits," thereby lengthening his sentence. (*Id.*)[2]

Before the Court is Defendant's Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. To Dismiss (Dkt. No. 23).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), Plaintiff's opposition to the Motion To Dismiss, (Pl.'s Decl. ("Pl.'s Mem.") (Dkt. No. 25)), and Plaintiff's supplemental opposition, (Further Opp'n Against Dismissal ("Pl.'s Supp. Mem.") (Dkt. No. 28)), and are taken as true for the purpose of resolving the instant Motion.[3] During the time of the alleged events, Plaintiff was a convicted prisoner at Livingston Correctional Facility. (Compl. 1.) Plaintiff was incarcerated in 1989 and is serving an indeterminate sentence with an aggregate minimum sentence of 20 years and aggregate maximum sentence of 40 years for crimes including first degree sodomy, first and second degree robbery, and third degree criminal possession of stolen property. *See* NYDOCCS, Inmate Information, http://nysdoccslookup.doccs.ny.gov (last visited Aug. 30, 2018) (DIN # 89A7005) (hereinafter "DOCCS Profile"); *see also* Pl.'s Mem. 4–5, 8.) At least with respect to the sodomy offense, Plaintiff did not plead guilty. (Compl. 4.)

---

[2] Plaintiff also lists the Fourth Amendment and the Fourteenth Amendment Equal Protection Clause, (Compl. 2), but because the Complaint alleges no unreasonable search or seizure, *see Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018), or differential treatment or invidious discrimination, *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 6–8 (S.D.N.Y. 2017), *aff'd*, 705 F. App'x 50 (2d Cir. 2017), these claims are dismissed.

[3] For ease of reference, the Court will cite to the ECF-generated page number located in the top right-hand corner of the page when citing to all of Plaintiff's submissions.

Under New York Correction Law § 622, DOCCS must "make available a sex offender treatment program for those inmates who are serving sentences for felony sex offenses . . . and are identified as having a need for such program in accordance with [§§ [803] and [805] of [Chapter 43]." N.Y. Corr. Law § 622(1). The first cited provision—§ 803—provides that every inmate serving an indeterminate sentence of imprisonment at a DOCCS facility "may receive time allowance against the maximum term of his . . . sentence not to exceed one-third of the maximum term imposed by the court." N.Y. Corr. Law § 803(1)(b). These allowances are also called "[g]ood behavior time" or "good time." N.Y. Penal Law § 70.30(4)(a). "Such allowances may be granted for good behavior . . . or progress and achievement in an assigned treatment program, and may be withheld, forfeited, or canceled in whole or in part for bad behavior . . . or failure to perform properly in the . . . program assigned." N.Y. Corr. Law § 803(1)(a).[4] Subject to certain conditions, an inmate, upon his request, must be "conditionally released" from incarceration when his total "good time" equals the unserved portion of the maximum of his indeterminate sentence—in other words, one-third. N.Y. Penal Law § 70.40(b). The second provision cited in § 622—Section 805—provides that inmates serving indeterminate sentences "shall be assigned a work and treatment program as soon as practicable," and that the DOCCS commissioner must "review the inmate's institutional record to determine whether he has complied with the assigned program" no more than two months prior to the inmate's eligibility for parole to determine if the inmate merits a certificate of earned eligibility. N.Y. Corr. Law

---

[4] As DOCCS Commissioner, Defendant is responsible for promulgating rules and regulations "for the granting, withholding, forfeiture, cancellation and restoration of allowances authorized by this section." *Id.* § 803(3). His decision regarding such allowances is final and not reviewable, and "[n]o person shall have the right to demand or require the allowances." *Id.* § 803(4).

§ 805. Finally, § 622 itself also states that any inmate committed to DOCCS custody "*on or after* the effective date of [§ 622] [, April 13, 2017,] for a felony sex offense" must, "as soon as practicable, be initially assessed by staff of the office of mental health regarding their "risk of violent sexual recidivism and . . . need for sex offender treatment while in prison." *Id.* § 622(5) (emphasis added).

Plaintiff alleges that, beginning in 2013, DOCCS threatened him and implemented sanctions against him for refusing to participate in a Sex Offender Treatment Program ("SOTP") in which he must admit guilt for his crime. (Compl. 3.)[5] Plaintiff refused to participate because of his right to appeal his conviction and the fact that he has maintained his innocence during and after his trial. (*Id.*) In other words, Plaintiff alleges, Defendants were attempting to force Plaintiff to change his plea from Not Guilty to Guilty. (*Id.* at 4.) Furthermore, Plaintiff alleges that he was never "screened for having a *need* for treatment," as required by § 622. (*Id.* at 3; *see also id.* at 4; Pl.'s Mem. 3–4; Pl.'s Supp. Mem. 2.)

However, on June 22, 2016, the Chairman of the Time Allowance Committee told Plaintiff that "[i]f [he] did not take the program, [he] would lose [his] Good Time [credits]." (Compl. 3.) Plaintiff therefore "consented to take the [SOTP] [but] on the way to the program, [he] was given a new time computation showing [he] had lost all of [his] Good Time Credits for the prior refusals." (*Id.*) He was told that he "must complete the program to be reconsidered for Good Time." (*Id.*) However, "[a]fter participating in the program for four months," Plaintiff was removed "for poor progress and participation," because he would not admit guilt for his

---

[5] To the extent Plaintiff brings claims regarding events occurring prior to March 27, 2014, they are barred by the three-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 236, 249–50 (holding that the court should apply the statute of limitations from the state's general personal injury statute of limitations to § 1983 claims); N.Y. C.P.L.R. § 214(5) (setting three year statute of limitations for personal injury actions).

crime of conviction, which he claims he "did not do." (*Id.*; *see also* Pl.'s Mem. 5 (same).)

"Plaintiff has lost fourteen (14) years of [G]ood [T]ime credits," although it is unclear over what

time period. (Pl.'s Mem. 4.) Plaintiff alleges that this policy therefore impermissibly changed

his sentence and conditional release date, as he did not receive any other infractions for rule

violations or refusing assigned programs. (*Id.* at 5–6; Compl. 4; Pl.'s Supp. Mem. 1, 3.)

Defendant, as Commissioner of DOCCS, is the "final" word on this matter and is "responsible

for" DOCCS' enforcement of its SOTP policy, (Pl.'s Mem. 6), which directs Defendant's

subordinates "to threaten and punish those inmates" like Plaintiff who are eligible for a § 622

SOTP but have not been screened as needing it, (Pl.'s Supp. Mem. 2).

As a result of this policy, Plaintiff cannot sleep or eat and suffers from stomach pain and

back aches, as well as exacerbation of his other "ongoing ailments." (Compl. 3.) He therefore

requests two million dollars in compensatory damages and additional punitive damages, as well

as an injunction to release Plaintiff from his allegedly "illegal detention." (*Id.* at 4.)

### B. Procedural Background

Plaintiff filed the Complaint on March 27, 2017 in the Western District of New York.

(Compl.) The case was then transferred to this Court on May 19, 2017. (Dkt. No. 4.) Plaintiff

was granted in forma pauperis status on June 6, 2017. (Dkt. No. 7.) On June 28, 2017, the Court

issued an Order of Service directing service on Defendant, (Order of Service (Dkt. No. 9)), who

was served on August 22, 2017, (Dkt. No. 22). Plaintiff filed an application for appointment of

pro bono counsel, (Dkt. Nos. 13, 16), which the Court denied without prejudice on October 11,

2017, (Dkt. No. 19).

On September 26, 2017, Defendant filed a pre-motion letter indicating the grounds on

which he would move to dismiss. (Letter from Kara Sweet, Esq. to Court (Sept. 26, 2017) (Dkt.

No. 15).) Plaintiff filed a response on October 6, 2017. (Letter from Plaintiff to Court (Oct. 6, 2017) (Dkt. No. 17).) The Court set a briefing schedule in a memo endorsement. (Dkt. No. 18.) On November 10, 2017, Defendant filed the instant Motion and accompanying documents. (Not. of Mot; *id.* Ex. 1 ("Def.'s Mem.").) Plaintiff filed a motion to dismiss the New York Attorney General's office from the case because of a conflict of interest, along with an accompanying declaration. (Dkt. No. 24; Pl.'s Mem.) The Court denied the motion to recuse the Attorney General, but stated that it "will consider the [Declaration] in opposition to the Motion to Dismiss." (Dkt. No. 26.) Defendant filed a reply memorandum on January 10, 2018. (Reply Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Reply") (Dkt. No. 27).) Plaintiff filed a supplemental opposition on January 22, 2018. (Pl.'s Supp. Mem.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint

must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense. But where the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted)

(second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a

notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but

it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true

all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the

Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must

"construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it]

suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal

quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not

exempt a pro se party from compliance with relevant rules of procedure and substantive law."

*Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

B. Analysis

Defendant argues that the Complaint should be dismissed for several reasons: Plaintiff failed to plausibly allege Defendant's personal involvement; his claims are barred by *Heck v. Humphrey*, 523 U.S. 477 (1994); he fails to allege a constitutional violation; and Defendant is entitled to qualified immunity. (*See* Def.'s Mem.) The Court will address each argument separately.

## 1. Personal Involvement

Defendant argues that the Complaint should be dismissed against him because he was not personally involved in the alleged constitutional violations. (Def.'s Mem. 8–9.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendant's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Defendant is not mentioned in the Complaint aside from in the caption. (*See* Compl.) However, Plaintiff makes allegations about Defendant's involvement in his other submissions, which the Court will consider. *See Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases and holding that a

court may rely on factual allegations raised for the first time in a pro se plaintiff's opposition papers if consistent with the allegations in the complaint).  Construing his submissions liberally, Plaintiff alleges that Defendant, as DOCCS Commissioner, either drafted or enforced the DOCCS policy of forcing inmates to choose between participating in the SOTP or forgoing their Good Time Credits.  (*See* Pl.'s Mem. 6 ("Defendant is Commissioner of DOCCS, the 'final' word on this matter and responsible for the constitutionally impermissible policy . . ."); Pl.'s Supp. Mem. 2 ("The Defendant's policies and directives direct[] his employees under his supervision to threaten and punish those inmates, such as Plaintiff . . . to participate in medical treatment without any screening or need for such treatment."); *id.* at 3 (Defendant's practices and policies directed by him in his official capacity have violated Plaintiff's constitutional rights. Defendant  . . . initiated a cruel and unusual burden upon . . . Plaintiff to earn his [G]ood [T]ime credits by completing the treatment program.").)  Therefore, Defendant allegedly "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom."  *Grullon*, 720 F.3d at 139 (internal quotation marks omitted); *see also Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *9 (S.D.N.Y. Feb. 14, 2018) (finding that the plaintiff plausibly alleged personal involvement by alleging that the defendant "instituted the policy requiring Shia inmates to change their religion from 'Islam' to 'Siha'"); *Pressley v. City of New York*, No. 11-CV-3234, 2013 WL 145747, at *10 (E.D.N.Y. Jan. 14, 2013) (concluding that the "[p]laintiff has sufficiently alleged that [the defendants] created an unconstitutional policy regarding her mail," by alleging that the defendants "collaborate on the policies for the mail room" and "have established, implemented, sanctioned, accepted or caused the deliberate practice at the City of retaining, opening and reviewing mail sent to [the] [p]laintiff and [the] [p]laintiff's business" (internal quotation marks omitted)); *Bissinger v. City of New*

*York*, No. 06-CV-2325, 2007 WL 2826756, at *4 (S.D.N.Y. Sept. 24, 2007) (finding allegations that the defendants "created the City's policy of prohibiting protected First Amendment activity or allowed its continuance" to be "sufficient to allege individual liability"). Although the Complaint could provide more details, "it is a reasonable inference that a policy" implementing a treatment program across DOCCS facilities "was either created or implemented by the DOC[CS] Commissioner," as "[t]hese are the kinds of policy decisions that one expects might fall within his . . . purview." *Russell v. Pallito*, No. 15-CV-126, 2017 WL 1093187, at *2 (D. Vt. Mar. 23, 2017). This is particularly true with respect to programs affecting the provision of Good Time Credits. *See* N.Y. Corr. Law § 803(3), (4) (stating that the DOCCS Commissioner is responsible for promulgating the rules and regulations governing Good Time Credits and his decisions are final and not reviewable). The Court therefore denies Defendant's Motion To Dismiss for lack of personal involvement.

### 2. *Heck v. Humphrey*

The gravamen of Plaintiff's Complaint is that Defendant's policy caused him to lose his accrued Good Time Credits and prevented him from earning more, which ultimately changed his sentence and conditional release date, because he would not plead guilty to his crime of conviction. (Compl.) Defendant argues that Plaintiff's claims are barred by *Heck*. (Def.'s Mem. 4–5.) In *Heck*, the Supreme Court held that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok,* 520 U.S. 641, 643 (1997) (quoting *Heck,* 512 U.S. at 487). Moreover, while *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily demonstrate the

invalidity of the *conviction*," 512 U.S. at 481–82 (emphasis added), the Supreme Court has since

clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily

implies the invalidity of that confinement, even if that challenge would not implicate the

underlying conviction or sentence. *See Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) ("[A]

state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily

demonstrate the invalidity of confinement or its duration.); *Edwards,* 520 U.S. at 648 (finding

that a prisoner's claim for money damages alleging that he was deprived of good-time credits

without due process necessarily implies the invalidity of the "punishment imposed," meaning the

deprivation of the credits).  Absent such a showing, a prisoner may only seek relief in the federal

courts through a petition for habeas corpus.  *See Wilkinson*, 544 U.S. at 81 (holding that habeas

corpus is the only remedy available to prisoners seeking to "invalidate the duration of their

confinement—either *directly* through an injunction compelling speedier release or *indirectly*

through a judicial determination that necessarily implies the unlawfulness of the State's

custody"); *see also Jenkins v. Haubert,* 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or

duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with

its exhaustion requirement may be employed.").

Defendant argues that the Complaint fulfills both conditions of the *Heck* rule.  First,

Plaintiff specifically alleges that neither his conviction, sentence, nor revocation of Good Time

Credits has been invalidated.  (Compl. 5 ("They have taken all of my [G]ood [T]ime Credits and

I cannot be release[d] upon my Conditional Release date . . . I cannot use habeas corpus due to

28 U.S.C. [§] 22[5]4 and I do not have counsel and my Article 78 application has been pending

since July 2016.").)  *See Edwards*, 520 U.S. at 643–44 ("[T]he sole remedy in federal court for a

prisoner seeking restoration of good-time credits is a writ of habeas corpus.").  Second,

Defendant argues that Plaintiff's claims, if true, necessarily imply the invalidity of his confinement, because he alleges that the SOTP policy delayed his conditional release and left him in DOCCS custody for longer than he would have been absent that policy. (Def.'s Mem. 4–5.) The Court agrees. The crux of Plaintiff's allegations is that he is "being detain[ed] illegal[l]y by the State" by being kept past his conditional release date—October 3, 2016. (Compl. 5.) In other words, Plaintiff contends that Defendant "chang[ed] [his] sentence and Conditional Release date." (*Id.* at 4; *see also* Pl.'s Mem. 5; Pl.'s Supp. Mem. 1.) Indeed, Plaintiff even requests that the Court order his "release . . . from this illegal detention." (Compl. 4.) Because a decision in favor of Plaintiff on these claims would result in his "immediate release from confinement or a shorter stay in prison," they are barred by *Heck*. *See Wilkinson*, 544 U.S. at 82. Put differently, were the Court to find that Defendant's SOTP policy, which required Plaintiff to forgo his earned and future Good Time Credits, was arbitrary, discriminatory, or unconstitutional punishment, it would necessarily imply that the invalidity of his continued confinement beyond the date of his conditional release. *See D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *6–7 (S.D.N.Y. Dec. 19, 2017) (finding due process and Eighth Amendment claims barred by *Heck* where the plaintiff argued that the defendants "unconstitutionally delayed his conditional release" by failing to provide transitional services and housing); *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at *4 (E.D.N.Y. July 16, 2007) (same); *see also Jackson v. Gokey*, No. 15-CV-0922, 2017 WL 1317122, at *2 (W.D.N.Y. Apr. 10, 2017) (explaining that when a prisoner challenges the loss of good time credits, "[t]his impacts the overall length of his confinement" and thus is barred by *Heck*).

To be sure, a prisoner may bring a procedural due process claim for the arbitrary revocation of Good Time Credits. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also*

*Edwards v. Goord*, 362 F. App'x 195, 197 (2d Cir. 2010). However, if such a claim is to survive *Heck*, it must be based only on use of "the wrong procedures," and cannot "call into question the lawfulness of the plaintiff's continuing confinement," as Plaintiff does here. *Heck*, 512 U.S. at 483 (distinguishing *Wolff*). Similarly, a prisoner may bring a § 1983 claim alleging that the *conditions* of his or her confinement violate the Eighth Amendment without violating *Heck*. *See, e.g.*, *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994) (per curiam) (holding that a § 1983 claim "stemming from conditions of confinement that allegedly violate the Eighth Amendment" are not per se barred by *Heck*). However, Plaintiff's claim is that he is being punished by the denial of Good Time Credits necessary for his conditional release, not by the conditions of his confinement. (Pl.'s Supp. Mem. 3; Pl.'s Mem. 5.) Thus, the Court grants Defendant's Motion To Dismiss Plaintiff's Eighth and Fourteenth Amendment claims as barred by *Heck*.

### 3. Constitutional Claims

Even assuming Plaintiff's claims were not barred by *Heck*, the Complaint fails to plausibly allege a constitutional violation. The Court will address each purported violation separately.

### a. Fourteenth Amendment

Construing his submissions generally, Plaintiff alleges two ways in which his due process rights were violated: (1) he was deprived of Good Time Credits, and (2) he was forced to participate in the SOTP even though he was not screened for, and did not demonstrate, a need for such treatment. [6] "[T]o present a [procedural] due process claim, a plaintiff must establish (1)

---

[6] Plaintiff also contends that Defendant "converted his judicially-imposed indeterminate sentence into a maximum sentence without judicial consent." (Pl.'s Mem. 5 (citing *Hill v. U.S. ex rel. Wampler*, 298 U.S. 460, 465 (1936)).) Even assuming this claim were not barred by *Heck*, it fails. *Wampler* stands for the proposition that a prisoner may be detained only on account of the judgment and sentence entered by the court. *See* 298 U.S. at 464–65. However, "DOCCS

that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation marks omitted). By contrast, "[t]o state a claim for substantive due process a plaintiff must allege that: (1) he had a valid [liberty] interest and (2) 'defendants infringed on that . . . right in an arbitrary or irrational manner.'" *Cherry v. New York City Hous. Auth.*, No. 15-CV-6949, 2017 WL 4357344, at *28 (E.D.N.Y. Sept. 29, 2017) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014)).

With respect to the deprivation of Good Time Credits, Plaintiff has not plausibly alleged either a procedural or substantive due process violation. There is no constitutional right to Good Time Credits; however, a prisoner has a protected liberty interest in such credits if they have already properly vested under state law. *See Wolff*, 418 U.S. at 557 (holding that prisoners who earned good time credits under state law could not be deprived of those credits without compliance with procedures satisfying the Due Process Clause); *Abed v. Armstrong*, 209 F.3d 63, 66–67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credit they have *already earned*, no such interest has been recognized in the opportunity to earn good time credit where, as here, prison officials have discretion to determine whether an inmate or class of inmates is eligible to earn good time credit." (citation omitted) (emphasis added)); *see also Edwards*, 362 F. App'x at 196–97 (noting that a prisoner has a protected liberty interest in accrued good time credits but not in the discretionary grant of them in the first place). Thus, to

---

calculates a defendant's ultimate release date," which includes "the sentences imposed by the court," but is based on "factors other than the length of his sentence . . . such as . . . the availability of so-called 'good time' credits." *Smith v. Wenderlich*, 826 F.3d 641, 653 (2d Cir. 2016). Thus, Defendant did not illegally expand Plaintiff's sentence even to the extent he caused Plaintiff's Conditional Release date to change. Indeed, Plaintiff's DOCCS record indicates that Plaintiff was previously released on parole and re-incarcerated for a parole violation, with an upcoming parole hearing scheduled for February 2020. (DOCCS Profile.)

the extent Plaintiff is alleging that the SOTP policy prevented him from earning *new or additional* Good Time Credits that would count towards his Conditional Release, he fails to identify a cognizable liberty interest under the Fourteenth Amendment. (*See* Compl. 3 ("I must complete the program to be reconsidered for Good Time. After participating in the program for four months, the program removed me . . ."); Pl.'s Mem. 5 (alleging that Defendant "continually den[ied] him the [G]ood [T]ime [C]redits available to every other inmate within DOCCS"); Pl.'s Supp. Mem. 2 ("Plaintiff is now required to complete the [SOTP] which he has consistently pleaded is impossible to accomplish in order to earn Good Time Credits . . .").)

Plaintiff also alleges that Defendant deprived him of his accrued Good Time Credits when he refused to join the SOTP. (Compl. 3.) However, Plaintiff does not allege that this was done without due process. Indeed, Plaintiff alleges that he received a hearing, before the "Time Allowance Committee." (*Id.*) *See* N.Y. Comp. Codes R. & Regs. ["N.Y.C.R.R."] Tit. 7 § 261.3 (describing the procedure of time allowance committees); *id.* § 261.4 (describing the hearing before the committee). Plaintiff does not allege how this hearing, or any other aspect of the decision to revoke his credits, was procedurally deficient under *Wolff* or its progeny. *See Wolff*, 418 U.S. at 557–58; *Edwards*, 520 U.S. at 648 (listing due process requirements for revocation of good time credits); *see also Edwards*, 362 F. App'x at 197 (finding no procedural due process violation where "the discretionary award of good time credits to [the plaintiff] was reconsidered in accordance with the procedures generally set forth in [7 N.Y.C.R.R. §§ 261.3–26.14]," in that the plaintiff "received a . . . hearing before the Commissioner," who found that the plaintiff's "refusal to participate in sex offender counseling made him an inappropriate candidate for such an award"). For example, Plaintiff does not allege that he was not given "a reasonable opportunity to call witnesses and present documentary evidence," "a fair and impartial hearing

officer," or "a written statement of the disposition." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (describing process due to an inmate under *Wolff*). Nor does Plaintiff allege how the revocation of his Good Time Credits for failure to participate in the SOTP was so "arbitrary or irrational" that it violated his substantive due process rights. *Royal Crown Day Care LLC*, 746 F.3d at 545; *see also Cunney v. Bd. of Trs. of Vill. Of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011) ("Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." (citation and internal quotation marks omitted)). Indeed, New York law explicitly provides that refusal to participate in an SOTP is a relevant consideration in the decision to revoke accrued Good Time Credits. *See* N.Y. Corr. Law § 803(1)(a) (stating that good time credits "may be withheld, forfeited or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned").

Plaintiff also alleges that he was forced to participate in the SOTP even though he was not screened for and did not "need" such treatment. (*E.g.*, Compl. 3.) This allegation appears to be based on Plaintiff's reading of New York Correction Law § 622 to require DOCCS to screen inmates for a need for treatment before subjecting them to an SOTP. (Pl.'s Mem. 3–4.) This reading is incorrect. As explained earlier, § 622 requires DOCCS to make an SOTP available to inmates serving sentences for felony sex offenses "and are identified as having a need for such program *in accordance with* [§§ 803 and 805 of Chapter 43 of the Correction Law]." N.Y. Corr. Law § 622 (emphasis added). Under § 805, an inmate serving an indeterminate sentence must be "assigned a work and treatment program as soon as practicable." *Id.* § 805. And, § 803 provides that Good Time Credits may be awarded for "progress and achievement in an assigned treatment program, and may be withheld, forfeited, or canceled . . . for . . . failure to perform properly in

the . . . program assigned." *Id.* § 803(1)(a). Together, §§ 803 and 805 stand for the proposition

that an inmate must be assigned to a treatment program upon entry into DOCCS custody, and

that the provision of Good Time Credits to that inmate can be based on their participation in that

program. *Id.* §§ 803, 805. These provisions state nothing about requiring "screening" or

demonstrating "medical need" for an SOTP. (Compl. 3–4.)[7] Therefore, to the extent Plaintiff

claims that Defendant violated his due process rights merely by failing to comply with § 622,

this claim fails. In any event, the failure to follow a state law or a prison regulation does not

violate due process. *See Golian v. New York City Admin. for Children Servs.*, 282 F. Supp. 3d

718, 727 (S.D.N.Y. 2017) ("The mere failure to follow state law does not violate substantive due

process." (citing *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010))); *Holland v. City of New

York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("An alleged violation of a prison policy,

directive, or regulation, in and of itself, does not give rise to a federal claim, because '[f]ederal

constitutional standards rather than state law define the requirements of procedural due

process.'" (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990))). The Court

therefore grants Defendant's Motion to Dismiss the Fourteenth Amendment claims.

### b. Fifth Amendment

Plaintiff also alleges that Defendant violated his Fifth Amendment rights by forcing

Plaintiff to admit responsibility for his crime—as a condition of release. (Pl.'s Mem. 5.)[8] The

---

[7] Section 622 states that any inmate convicted of a felony sex offense committed to
DOCCS custody "*on or after* the effective date of [the statute]"—that is, April 13, 2017—must
be screened "as soon as practicable" for the "need for sex offender treatment while in prison."
*Id.* § 622(5). Plaintiff was admitted to DOCCS custody in 1989, so this provision does not apply
here. *See* DOCCS Profile.

[8] Plaintiff suggests that this also constituted "cruel and unusual punishment" under the
Eighth Amendment, but cites *Wolff*, a due process case. (Pl.'s Mem. 5.) The Eighth Amendment
does not, without more, cover compelled speech. *See LaBounty v. Adler*, 933 F.2d 121, 123–24
(2d Cir. 1991) ("To constitute a violation of the cruel and unusual punishment clause of the

Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In 2010, the Supreme Court considered whether this privilege against compelled self-incrimination was violated by a prison SOTP requiring participants to admit responsibility for their crimes of conviction. *See McKune v. Lile*, 536 U.S. 24, 30 (2002). Specifically, the Court considered a Kansas state prison program in which participants were required to fill out a form "accept[ing] responsibility for the crime for which they have been sentenced" and "to complete a sexual history form . . . detail[ing] all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses." *Id.* This "information [wa]s not privileged," and "Kansas le[f]t open the possibility that new evidence might be used against sex offenders in future criminal proceedings." *Id.* Prisoners who refused to participate in the program suffered a reduction in various prison privileges, including transfer to another facility. *Id.* at 30–31. A plurality of the Court concluded that the program did not violate the Fifth Amendment, explaining that "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against compelled self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." *Id.* at 37–38 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The plurality therefore held that an SOTP like the one at issue here "does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating" fall short of constituting "atypical and significant hardships" under *Sandin*'s definition. *Id.* However, Justice O'Connor, concurring

---

[E]ighth [A]mendment, a prisoner must allege something akin to unnecessary and wanton infliction of pain, or punishment incompatible with the evolving standards of decency that mark the progress of a maturing society." (citations and internal quotation marks omitted)).

only in the judgment, rejected the plurality's reliance on the *Sandin* due process standard, but agreed that the program did not constitute compulsion under the Fifth Amendment. *Id.* at 53–54. Therefore, *McKune* did not set forth a definitive answer regarding "what standard to apply when evaluating compulsion for purposes of the Fifth Amendment privilege against self-incrimination in a prison setting," and the Second Circuit has declined to take a position on this question. *United States v. Jones*, 299 F.3d 103, 111 n.2 (2d Cir. 2002); *see also Edwards*, 362 F. App'x at 198–99 (explaining that "there was no majority opinion setting forth the appropriate analysis or rule" in *McKune* and thus "[a]ll that can be said . . . is that a majority of the justices agreed that the Fifth Amendment privilege against compelled self-incrimination was not violated when prisoner faced less restrictive sanctions than" the loss of good time credits).

However, "[s]ince *McKune*, several courts have held that the rationale in *McKune* extends to the loss of good time credits or jeopardizing the chance for parole, and that such a consequence for the failure to participate in a sex offender program does not constitute a violation of the Fifth Amendment." *Sayles v. Fischer*, No. 08-CV-0747, 2011 WL 1199834, at *5 (W.D.N.Y. Mar. 29, 2011) (collecting cases); *see also McChesney v. Hogan*, No. 08-CV-1290, 2010 WL 1027443, at *7 (N.D.N.Y. Feb. 26, 2010) ("It is by now fairly well settled that risking the loss of good time credits or jeopardizing the chance for parole, alone, does not qualify as sufficiently compulsive to meet the test."), *adopted by* 2010 WL 1037957 (N.D.N.Y. Mar. 18, 2010).[9] Generally, these cases rely on two arguments to reach this conclusion: first, that there is no liberty interest in receiving good time credits, and second, that participation is voluntary and failure to participate does not guarantee a denial of parole. *See Sayles*, 2011 WL 1199834, at

---

[9] The *McKune* plurality did note, in dicta, that "respondent's decision not to participate in the Kansas [SOTP] did not . . . affect his eligibility for good-time credits or parole." 536 U.S. at 38.

*5–6. Here, Plaintiff had the opportunity to refuse participation in the SOTP and to refuse to admit responsibility, which he exercised. (Compl. 3.) Although he risked the loss of his accrued Good Time Credits, he was not "made to be a 'witness' against himself in violation of the Fifth Amendment's Self–Incrimination Clause[,] because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to the cruel trilemma of self-accusation, perjury or contempt." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (internal quotation marks omitted). Indeed, unlike the program in *McKune*, Plaintiff does not allege that the SOTP at issue here required him to admit responsibility for uncharged crimes or crimes of which he was not convicted. *See* 536 U.S. at 30; *see also Hernandez v. Tribley*, No. 14-CV-21, 2016 WL 1749765, at *2 (W.D. Mich. May 3, 2016) ("Petitioner was not asked to admit to conduct that could support a conviction for criminal sexual conduct, but to admit to the factual circumstances that surrounded the crimes for which he was actually convicted.").

Rather, as the Tenth Circuit explained in analyzing a similar claim:

> "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McKune*, 536 U.S. at 53 (O'Connor, J., concurring) (quoting *McGautha v. California*, 402 U.S. 183, 213 (1971)). [The plaintiff] having been convicted through a fair criminal process of a sex offense, was made aware of the consequences of any failure on his part to complete the S[O]TP upon intake into the prison. The fact that the KDOC will not let [the plaintiff] complete the S[O]TP unfettered by its more unpleasant aspects does not render his original choice to enter the program any less voluntary. *See [Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998)] ("It is difficult to see how a voluntary interview could 'compel' respondent to speak.").

*Searcy v. Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002); *see also Simmons v. Nish,* No. 10-CV-4934, 2011 WL 2175851, at *4 (E.D. Pa. May 9, 2011) ("Because the parole proceeding that petitioner challenges is voluntary in nature and an inmate's decision to remain silent risked no additional penalty as that concept has been understood by the Third Circuit, the Board did not

violate petitioner's Fifth Amendment rights when part of its reason for denying petitioner parole related to the refusal, to accept responsibility for [the] offenses of conviction." (alterations and internal quotation marks omitted)), *adopted by* 2011 WL 2175894 (E.D. Pa. June 3, 2011). Therefore, because, as alleged, Plaintiff was faced only with the choice between forgoing the *potential* for an earlier Conditional Release date through accumulation of Good Time Credits— something to which he is not constitutionally entitled—or admitting responsibility only for his crime of conviction, his Fifth Amendment rights were not violated. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Edwards*, 362 F. App'x at 199 (affirming denial of habeas corpus relief to petitioner who argued that the state court erroneously found that the revocation of his good time credits for refusing to participate in a SOTP violated *McKune*). The Court therefore grants the Motion to Dismiss Plaintiff's Fifth Amendment claim.[10]

### c. Eighth Amendment

Finally, Plaintiff alleges that Defendant violated the Eighth Amendment by forcing him to undergo a medical treatment which he did not need. (Pl.'s Mem. 3, 6.) The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. It is axiomatic that "[t]he conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam).

---

[10] To the extent that Plaintiff argues that Defendant attempted to or did force Plaintiff to change his *plea* from "Guilty" to "Not Guilty," this claim is not plausible. (Compl. 4.) Plaintiff was convicted and sentenced, (Pl.'s Mem. 8), and does not allege any facts plausibly suggesting that the SOTP required him to somehow change his plea. Indeed, he alleges that the SOTP required him to "admit to a crime [he] did not do" and "to admit to committing the crime," which is different from actually pleading guilty before a court. (Compl. 3.) *See* Fed. R. Crim. P. 11 (rules governing guilty pleas).

"Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff alleges no facts satisfying these standards here.

To be sure, forcing a prisoner to undergo an unwanted and unnecessary medical treatment could violate the Eighth Amendment, if it posed a risk to his or her health or safety or was done for the purpose of inflicting pain. However, as explained earlier, Plaintiff was not forced to participate in the SOTP; rather, he was given the ability to refuse, which he did initially, and then he "consented" to participate when he was told he would otherwise lose his Good Time Credits. (Compl. 3.) *See Jones v. Goord*, 435 F. Supp. 2d 221, 238 (S.D.N.Y. 2006) (finding that inmates' "voluntary accumulation of personal property" in small cells did not violate the Eighth Amendment as the clutter was caused by "the inmates' own desire for personal property and their refusal to use out-of-cell storage, not any 'punishment' imposed by defendants"); *see also Haas v. Weiner*, 765 F.2d 123, 124 (8th Cir. 1985) (per curiam) (finding "no substantial evidence that [the plaintiff's] will was overborne, or that he was offered inducements that he did not have the power to resist if he chose," and that "conduct in which one voluntarily engages can hardly be said to violate the Eighth Amendment"); *cf. Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (holding that a prisoner's liberty interest in refusing medical treatment includes "a

concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment"). Moreover, although Plaintiff describes the SOTP as "a form of medical treatment," he alleges no facts describing what sort of treatment he was forced to undergo, let alone that he was somehow harmed by it. (Pl.'s Mem. 6.) *See Kingsley v. Bureau of Prisons*, 937 F.2d 26, 32 (2d Cir. 1991) (finding that there was "no medical justification" for the defendant's action and it "may have hindered, rather than helped," the plaintiff, but it did not "amount[] to cruel and unusual punishment" because "[n]o harm was inflicted"). Nor does Plaintiff allege any facts about Defendant's, or his subordinates', states of mind. Put differently, even assuming Plaintiff did not "need" the SOTP, he alleges no facts plausibly suggesting that Defendant knew that and imposed it anyway. *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Therefore, the Court grants Defendant's Motion to Dismiss the Eighth Amendment claim.[11]

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile"). Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The new amended complaint will replace, not supplement, the complaint currently before the Court. It

---

[11] Because the Court dismisses Plaintiff's claims on the merits, it need not address Defendant's alternative argument that he is entitled to qualified immunity. (Def.'s Mem. 10–11.)

therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, this action could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 23), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: September 25, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE