UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY ADAMS,

                              Plaintiff,

          v.

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

No. 17-CV-3794 (KMK)

OPINION & ORDER

Appearances:

Jerry Adams
Malone, NY
*Pro Se Plaintiff*

Deanna Lea Collins, Esq.
Yan Fu, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

          Pro se Plaintiff Jerry Adams ("Plaintiff") filed the instant Amended Complaint, pursuant

to 42 U.S.C. § 1983, against Acting Commissioner of the New York Department of Corrections

and Community Supervision ("DOCCS") Anthony Annucci ("Annucci," or "Commissioner")

and Commissioner of the New York State Office of Mental Health ("OMH") Ann Marie T.

Sullivan ("Sullivan"; with Annucci, "Defendants").  (Am. Compl. (Dkt. No. 36).)[1]  Plaintiff

alleges that Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth

Amendments of the United States Constitution by requiring him to participate in a treatment

program and imposing certain sanctions, including the revocation of good time credits, when he

_____

[1] Plaintiff indicates that Defendants are sued only in their "personal capacit[ies]."  (Am.
Compl. 1.)

failed to participate in it.  (*See generally id.*)  Construing the Amended Complaint liberally, Plaintiff also asserts certain claims under state law.  (*See generally id.*)

Before the Court is Defendants' Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 52).)  For the following reasons, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am. Compl.), an affidavit submitted by Plaintiff, seemingly to supplement his Amended Complaint, (Pl.'s Aff. in Supp. ("Pl. Aff.") (Dkt. No. 39)), and Plaintiff's Opposition to the Motion To Dismiss, (Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt No. 56)), and are taken as true for the purpose of resolving the instant Motion.

Plaintiff is a convicted prisoner currently housed at Livingston Correctional Facility ("Livingston").  (Am. Compl. 1.)[2, 3]  Plaintiff was incarcerated in June 1989 and is serving an indeterminate sentence with an aggregate minimum sentence of 20 years and aggregate maximum sentence of 40 years for crimes including first degree sodomy, first and second degree robbery, and third degree criminal possession of stolen property.  (*See* NYDOCCS, Inmate Information, http://nysdoccslookup.doccs.ny.gov (last visited Mar. 13, 2020) (DIN # 89A7005) (hereinafter "DOCCS Profile"); *see also* Am. Compl. 2.)

---

[2] For ease of reference, the Court will cite to the ECF-generated page number located in the top right-hand corner of the page when citing to all of Plaintiff's submissions.

[3] It is unclear where Plaintiff was housed during the alleged events, which may have taken place at various facilities.  For example, Plaintiff alleges that his Time Allowance Committee ("TAC") hearing (the "TAC Hearing") took place at Woodbourne Correctional Facility, (Am. Compl. 5), and that he filed a grievance at the Gowanda "residential program," (*id.* at 2).

As set forth in the Court's previous Opinion, under New York Correction Law § 622, DOCCS must "make available a sex offender treatment program for those inmates who are serving sentences for felony sex offenses . . . and are identified as having a need for such program in accordance with [§§ 803] and [805] of [Chapter 43]." N.Y. Corr. Law § 622(1). The first cited provision—§ 803—provides that every inmate serving an indeterminate sentence of imprisonment at a DOCCS facility "may receive time allowance against the maximum term of his . . . sentence not to exceed one-third of the maximum term imposed by the court." *Id.* § 803(1)(b). These allowances are also called "[g]ood behavior time" or "good time." N.Y. Penal Law § 70.30(4)(a). "Such allowances may be granted for good behavior . . . or progress and achievement in an assigned treatment program, and may be withheld, forfeited, or canceled in whole or in part for bad behavior . . . or failure to perform properly in the . . . program assigned." *Id.* § 803(1)(a).[4] Subject to certain conditions, an inmate, upon his request, must be "conditionally released" from incarceration when his total "good time" equals the unserved portion of the maximum of his indeterminate sentence—in other words, one-third. N.Y. Penal Law § 70.40(b). The second provision cited in § 622—§ 805—provides that inmates serving indeterminate sentences "shall be assigned a work and treatment program as soon as practicable," and that the DOCCS Commissioner must "review the inmate's institutional record to determine whether he has complied with the assigned program" no more than two months prior to the inmate's eligibility for parole to determine if the inmate merits a certificate of earned eligibility. N.Y. Corr. Law § 805. Finally, § 622 also states that any inmate committed to

---

[4] As DOCCS Commissioner, Annucci is responsible for promulgating rules and regulations "for the granting, withholding, forfeiture, cancellation and restoration of allowances authorized by this section." N.Y. Corr. Law § 803(3). His decision regarding such allowances is final and not reviewable, and "[n]o person shall have the right to demand or require the allowances." *Id.* § 803(4).

DOCCS custody "*on or after* the effective date of [§ 622] [, April 13, 2007,] for a felony sex offense" must, "as soon as practicable, be initially assessed by staff of the [O]ffice of [M]ental [H]ealth" regarding their "risk of violent sexual recidivism and . . . need for sex offender treatment while in prison." *Id.* § 622(5) (emphasis added).

Plaintiff claims that Annucci "put in place . . . DOCCS to assign . . . [P]laintiff to the Sexual Offender Treatment Program" ("SOTP"). (Am. Compl. 3.)[5] Plaintiff "refused to go to the program without due process," and, as a result, Annucci "[invoked] sanctions against [Plaintiff]," including removing him from his assigned program in food services, revoking his single room housing "privilege" and moving him to a "dorm setting," reducing his pay grade until he agreed to participate in the program, and transferring him to a facility far from his family. (*Id.*)[6] Further, Plaintiff alleges that he was never "screened, evaluated, and[] identified as having a need for treatment" and was never diagnosed with a mental illness. (*Id.* at 2

---

[5] According to Plaintiff's original Complaint, the effort to assign Plaintiff to the SOTP began in 2013. (Compl. 3 (Dkt. No. 1).)

[6] Plaintiff does not identify when these alleged sanctions were imposed, but the Court assumes that they were put in place between Plaintiff's original refusal to participate in the SOTP and when Plaintiff ultimately consented to do so after the TAC Hearing on June 22, 2016. Therefore, claims based on events that occurred within this broad time frame may be barred by the statute of limitations. "Section 1983 actions filed in New York are [] subject to a three-year statute of limitations," *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted), which begins to accrue "when the plaintiff knows or has reason to know of the harm," *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation and quotation marks omitted). However, because the Parties have not addressed this issue, the Court assumes for the purposes of this Motion that the statute of limitations does not apply to these claims.
    It appears that at least one of Plaintiff's refusals to participate in the SOTP occurred on December 23, 2013, when Plaintiff signed a "program refusal notification" stating that he "refus[ed] to participate in the . . . [s]ex [o]ffender [p]rogram" at Woodbourne. (Pl. Aff. Ex. A ("Program Refusal Form") (Dkt. No. 39).) The form indicates, "I understand that refusal to participate in recommended programming may result in . . . the loss of [g]ood [t]ime." (*Id.*) The Court properly considers this document on a motion to dismiss, to the extent it is consistent with the allegations in Plaintiff's Amended Complaint. *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (noting that, on a motion to dismiss involving a pro se litigant, courts may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint" (citation and quotation marks omitted)).

(emphasis omitted).)  Plaintiff also alleges that he was "never designated a [s]ex [o]ffender by . . . [OMH]," (Pl.'s Mem. 4), though he also alleges that he was unlawfully designated as a sex offender, (*id.* at 1).  At some point, Plaintiff filed a grievance at the "Gowanda residential program" related to Defendants' failure to screen him for mental disorders.  (Am. Compl. 2; *id.* Ex. B ("Pl.'s Grievance").)  However, Plaintiff's grievance was denied on August 9, 2016, because he qualified for required attendance at the SOTP due to his "sentence for a specified offense as a sexually motivated felony under Penal Law [§] 130.91," and because after investigation, it was determined that Plaintiff had "not provided any compelling reason to substantiate [a] change to the current policy."  (*Id.*)  Plaintiff appears to have appealed this decision on August 11, 2016, (*id.*), which the Central Office Review Committee ("CORC") "unanimously denied" on April 14, 2017, (Pl.'s Mem. Ex. A ("CORC Decision") (Dkt. No. 56)).[7]  The CORC found that Plaintiff was "appropriately referred to the [SOTP] based on his instant offense, and that the referral was approved by the Office of Guidance and Counseling." (*Id.*)  CORC further clarified that "participation in the [SOTP] does not require an inmate to admit to the commission of a particular crime," and instead "require[s] [participants] to accept responsibility for the conduct that resulted in their criminal conviction . . . without admitting the violation of specific sections of the Penal Law."  (*Id.*)

---

[7] The Court properly considers documents attached to Plaintiff's Opposition in considering Defendants' Motion, to the extent those documents are consistent with the allegations in the Amended Complaint.  *See Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) ("On a motion to dismiss, the [c]ourt can consider documents that a pro se litigant attaches to his opposition papers." (citation and italics omitted)); *see also Alsaifullah*, 2013 WL 3972514, at *4 n.3 (noting that, on a motion to dismiss involving a pro se litigant, courts may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint" (citation and quotation marks omitted)).

On June 22, 2016, "[D]efendant ordered and authorized" the TAC at Woodbourne Correctional Facility to conduct the TAC Hearing related to Plaintiff's refusal to participate in the SOTP, during which Plaintiff was counseled to "participate in the program if [he] want[ed] to go home." (Am. Compl. 5, 7.) Though Plaintiff ultimately consented to participate, he was "subsequently . . . removed for failure to be treated." (*Id*. at 5.) Plaintiff alleges that after being removed from the SOTP he was "given a new time computation with the loss of all good time credits (earned)," which, at the time, amounted to 14 years and 28 days. (*Id*.) Plaintiff also claims that when he appeared before the TAC on June 22, 2016, he was unaware that the TAC was a "punitive body in DOCCS" and that he was "appearing before a judicial body upon charges of misbehavior." (*Id*.) Further, according to Plaintiff, the function of the TAC is "not the investigation and punishment of particular acts of misconduct charged or not charged." (Pl.'s Mem. 2.) Instead, the TAC is intended to "evaluate[] the inmate[']s entire prison record and recommend[] the amount of good behavior allowance to be granted[,] not as a punitive sanction but as a standard measuring the progress, capacity, efforts[,] and achievement by the prisoner during his stay in prison." (*Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 7 §§ 260.3, 261.2).) Plaintiff alleges that his TAC Hearing served to "authorize retaliation and vengeance against . . . [Plaintiff] . . . for refusing [m]ental [h]ealth [t]reatment." (Am. Compl. 7.) Prior to the TAC Hearing, Plaintiff "received no reports of misconduct or rule violations . . . and . . . was not informed of any recommendation of any time loss . . . to defend against such threat." (*Id.* at 5.) Plaintiff also claims that he was never charged with misbehavior or rule violations, did not receive any "[s]uperintendent hearings for refusing any programs," and in fact did not violate any DOCCS rules or regulations. (*Id.* at 5–6; Pl.'s Mem. 3.)[8] Therefore, there were no charges

---

[8] According to Plaintiff, whenever a misconduct report is issued, an "Adjustment

before the TAC to "justify withholding all of . . . [P]laintiff's earned good time [credits]." (Am. Compl. 7.) Plaintiff further alleges that the TAC submitted no evidence with its recommendation to the Commissioner, that the TAC Hearing was "unauthorized," and that the outcome was pre-determined, as evidenced by a copy of the TAC's report, which was dated June 7, 2016 and was unsigned by Annucci. (*Id*.) Plaintiff was not given the final order of the Commissioner, or any reasoning as to his final decision. (*Id*. at 8.) Further, according to Plaintiff, Annucci "has no authority to assign any inmate to mental health treatment," and Sullivan "has the responsibility and duty to oversee all matters pertaining to the treatment and care of all inmates refer[r]ed to the [SOTP]," but she failed in these duties by "allow[ing] . . . Annucci[] to send inmates to the [SOTP] without screening [or] diagnosis from . . . OMH . . . as mandated by statute." (*Id.* at 2–3.)

As a result of these alleged violations, Plaintiff suffers from "serious psychological and physical pain," (*id.* at 2), including headaches, backaches, stomach pain, sleeplessness, stress, and anxiety, (*id.* at 4). Plaintiff has also been stigmatized by, for example, being called names such as "sex offender," and alleges that his "institutional records" have been stigmatized as well. (*Id.*; Pl.'s Mem. 1, 5.) Plaintiff seeks $2,000,000 in damages from each defendant, $10,000,000 in punitive damages, and "[r]eparative injunctions to restore . . . [P]laintiff to his status before the violations." (Am. Compl. 8.)

---

Committee . . . made up of three employees" investigates the allegation and should "endeavor to obtain from the inmate as full and complete [an] explanation of his behavior in the situation as possible. . . . The [Adjustment Committee] may either recommend that no action be taken, or[] require counseling or imposition of relatively minor sanctions to improve the inmate[']s behavior." (Am. Compl. 6 (citing N.Y. Comp. Codes R. & Regs. tit. 7 §§ 252.1– 252.5).)

<u>B.  Procedural Background</u>

Plaintiff commenced the instant Action on March 27, 2017 in the Western District of New York, naming Annucci as the only Defendant.  (*See* Compl. (Dkt. No. 1).)  The case was transferred to this Court on May 19, 2017.  (Dkt. No. 4.)  Plaintiff was granted in forma pauperis ("IFP") status on June 6, 2017.  (Dkt. No. 7.)  Plaintiff then filed an Application for appointment of pro bono counsel, (Dkt. Nos. 13, 16), and the Court denied Plaintiff's request without prejudice on October 11, 2017, (Dkt. No. 19).

On September 26, 2017, Annucci filed a Pre-Motion Letter, seeking to file a Motion To Dismiss the Complaint.  (Dkt. No. 15.)  Plaintiff responded on October 6, 2017, (Dkt. No. 17), and the Court set a briefing schedule, (Dkt. No. 18).  On November 10, 2017, Annucci filed a Motion To Dismiss.  (Dkt. No. 23.)  Although Plaintiff moved to dismiss the New York Attorney General's Office from the case because of an alleged conflict of interest, (Dkt. No. 24), the Court denied the motion, but considered Plaintiff's accompanying Declaration in opposition to Annucci's Motion To Dismiss, (Dkt. Nos. 25–26).  Annucci filed a Reply on January 10, 2018, (Dkt. No. 27), and Plaintiff filed a Sur-Reply on January 22, 2018, (Dkt. No. 28).

On September 25, 2018, the Court issued an Opinion & Order dismissing Plaintiff's claims without prejudice and allowing Plaintiff 30 days to file an Amended Complaint.  (Op. & Order ("Op.") 24–25 (Dkt. No. 33).)  After receiving an extension from the Court, Plaintiff filed his Amended Complaint on November 16, 2018, adding Sullivan as a Defendant.  (Dkt. Nos. 34–35; Am. Compl.)  Approximately one month later, Plaintiff filed an Affidavit titled "Affidavit in Support upon the Law of New York State and the United States Constitution, CPLR 7804, Mental Hygiene Law 27.8 14 NYCRR."  (Dkt. No. 39.)  Also after receiving an extension from the Court, Annucci filed a Pre-Motion Letter seeking to file a Motion To Dismiss the Amended

Complaint on February 5, 2019. (Dkt. No. 41.) On February 14, 2019, the Court set a briefing schedule. (Dkt. No. 42.)

On February 15, 2019, Plaintiff filed a document titled "Summary Judgment and Motion for Default Judgment[] and Appointment of Counsel." (Dkt. No. 43.) On February 21, 2019, Annucci sought denial of these motions because summary judgment was premature, and Defendants were not in default. (Dkt. No. 44.) In a Memo Endorsement on February 26, 2019, the Court denied Plaintiff's "Motions" and indicated that it would issue an Order of Service for Sullivan, which was issued one day later. (Dkt. Nos. 45, 47.) On April 8, 2019, Sullivan requested leave to join the instant Motion, which the Court granted. (Dkt. Nos. 50–51.)

On April 12, 2019, Defendants filed the instant Motion. (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 53); Decl. of Deanna L. Collins, Esq. in Supp. of Mot. ("Collins Decl.") (Dkt. No. 54).) Plaintiff filed an Opposition on May 3, 2019. (Pl.'s Mem.) Defendants filed a Reply on May 31, 2019. (Defs.' Reply Mem. in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 58).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," id. at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering the Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).

However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11 CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

 B.  Analysis

Defendants argue that Plaintiff's Amended Complaint should be dismissed because his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (Defs.' Mem. 4–6); the Amended Complaint fails to state claims under the First, Eighth, and Fourteenth Amendments, (*id.* at 6–12); and Defendants are entitled to qualified immunity, (*id.* at 13–14). The Court will address

each of these arguments to the extent necessary, as well as other claims raised by Plaintiff in the Amended Complaint.

### 1. *Heck v. Humphrey*

Plaintiff continues to allege that Defendants deprived him of his accrued good time credits because he failed to complete the requisite SOTP, in violation of his Constitutional rights. (*See generally* Am. Compl.) Defendants again argue that Plaintiff's claims are barred by the Supreme Court's ruling in *Heck*. (Defs.' Mem. 4–6.)

In *Heck*, the Supreme Court held that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck*, 512 U.S. at 487). Moreover, while *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily demonstrate[] the invalidity of the *conviction*," 512 U.S. at 481–82 (emphasis added), the Supreme Court has since clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence, *see Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred . . . no matter the relief sought . . . , no matter the target of the prisoner's suit[,] . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis in original)); *Edwards*, 520 U.S. at 648 (finding that a prisoner's claim for monetary damages alleging that he was deprived of good time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits). Absent such a showing, a prisoner may only seek relief in the federal

courts through a petition for habeas corpus. *See Wilkinson*, 544 U.S. at 81 (holding that habeas corpus is the only remedy available to prisoners seeking to "invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody" (emphases in original)); *see also Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed.").

First, Defendants argue that Plaintiff's conviction or sentence has not been invalidated. (Defs.' Mem. 4–5.)  Indeed, Plaintiff does not make such an allegation in his Amended Complaint.  (*See generally* Am. Compl.)  Next, Defendants argue that Plaintiff "both directly and indirectly seeks to invalidate the duration of [his] confinement," and that the Amended Complaint "necessarily implies the invalidity of Plaintiff's duration of confinement."  (Defs.' Mem. 4–5.)  The Court agrees with respect to certain of Plaintiff's claims under the First, Eighth, and Fourteenth Amendments.

Although Plaintiff has omitted language that appeared in his first Complaint, explicitly challenging the length of his sentence and demanding immediate release, Plaintiff's Amended Complaint still fundamentally challenges the revocation of his good time credits, and success on these claims would still effectively invalidate Plaintiff's length of confinement.  (*See* Op. 11–14.) For example, Plaintiff asserts that Annucci "arbitrarily and capriciously revo[ked] his 14 years and 28 days of earned good time credits . . . for no rule violation or [m]isbehavior . . . to warrant the unwanton taking of [P]laintiff's earned good time credits," (Am. Compl. 5–6); "knowingly moved to deprive [] [P]laintiff of his earned good time credits merely as a [retaliatory] and revengeful abuse of authority," (*id.* at 6); "authorized the TAC to exact revenge upon . . .

[Plaintiff]," (*id.* at 7); and failed to "with[o]ld . . . [P]laintiff's earned good time credits in accordance with the criteria" of certain Correction Laws, instead revoking Plaintiff's credits despite the fact that he did not commit any rule violations, (*id.* at 6). Plaintiff also continues to allege that he was wrongfully assigned to the SOTP, and his "failure to be treated" was the reason behind the loss of his good time credits. (*Id.* at 2–5.)

Even without explicit references to the length of his sentence, Plaintiff's allegations continue to challenge the length of his confinement as a result of the revocation of good time credits. *See Jackson v. Gockey*, No. 15-CV-0922, 2017 WL 1317122, at *2 (W.D.N.Y. Apr. 10, 2017) (explaining that when a prisoner challenges the loss of good time credits, "[t]his impacts the overall length of his confinement" and is barred by *Heck*). Were the Court to find in Plaintiff's favor and determine that his good time credits were wrongly withheld, the finding would inevitably involve a "judicial determination that necessarily implies the unlawfulness of the State's custody," resulting in Plaintiff's "immediate release from confinement or a shorter stay in prison." *Wilkinson*, 544 U.S. at 81–82; *see also Jenkins*, 179 F.3d at 23 ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed."). Similarly, were the Court to grant Plaintiff his requested "[r]eparative injunctions to restore [] Plaintiff to his status before the violations," (Am. Compl. 8), such relief would necessarily require the Court to restore Plaintiff's good time credits, which is plainly impermissible under *Heck. See Wilkinson*, 544 U.S. at 81 (holding that habeas corpus is the only remedy available to prisoners seeking to "invalidate the duration of their confinement"); *Edwards*, 520 U.S. at 643–44 ("[T]he sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus."). Moreover, granting monetary relief for the allegedly improper process that led to the revocation of

Plaintiff's good time credits would also trigger *Heck*. *See id.* at 648 (finding that a prisoner's claim for money damages alleging that he was deprived of good time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits).

Plaintiff also alleges procedural defects with respect to his TAC Hearing, claiming that he was "deprived . . . [of] []his interest [in the good time credits] as a result of an insufficient process." (Am. Compl. 5.) Specifically, Plaintiff asserts that the TAC conducted an "unauthorized hearing" to "exact revenge . . . upon no charges of wrongdoing"; that the TAC's revocation of the good time credits was "pre-decided"; that the TAC Report issued to Plaintiff was unsigned by Annucci; and that Plaintiff did not receive a "final order" from Annucci, or reasons for the TAC's determination. (*Id.* at 7–8.) Plaintiff also claims that he was not informed that the TAC was a "punitive body," nor that he was appearing before the TAC "upon charges of misbehavior"; that he did not receive a misconduct or rule violation report or "[s]uperintendent hearing"; that his credits were revoked despite the fact that he did not commit any rule violations; and that he did not have the ability to defend himself because he was not informed of any recommendation of time loss or earned time credit. (*Id.* at 5.)

Although a prisoner "may bring a procedural due process claim for the arbitrary revocation of [g]ood [t]ime [c]redits[,] . . . if such a claim is to survive *Heck*, it must be based only on use of 'the wrong procedures,' and cannot 'call into question the lawfulness of the plaintiff's continuing confinement.'" (Op. 13–14 (quoting *Heck*, 512 U.S. at 483).) Additionally, under *Edwards*, procedural due process claims are not cognizable under § 1983 when the "claimed procedural defect . . . if established, would necessarily imply the invalidity of [a] punishment," such as the revocation of good time credits. *Peralta v. Vasquez*, 467 F.3d 98,

103 (2d Cir. 2006) (citing *Edwards*, 520 U.S. at 648). Here, the "gravamen of Plaintiff[']s allegations is that his [credits] w[ere] wrongly and unconstitutionally revoked," *Jude v. New York State*, No. 07-CV-5890, 2009 WL 928134, at *8 (S.D.N.Y. Mar. 30, 2009), and thus are barred by *Heck* and *Edwards*. Simply put, Plaintiff's claims that the TAC Hearing was unauthorized, initiated merely as an act of retaliation, and that the TAC's finding was pre-determined are impermissible under *Heck* and its progeny because such claims "necessarily imply" that the deprivation of Plaintiff's good time credits stemmed from "improper motives." *Smolen v. Corcoran*, No. 10-CV-6040, 2013 WL 4054596, at *3 (W.D.N.Y. Aug. 12, 2013) (finding that the plaintiff's claim that he was retaliated against for exercising First Amendment rights through the loss of good time credits and a lengthened period of incarceration was barred by *Heck* and *Edwards*); *see also Edwards*, 520 U.S. at 647 (finding that the impartiality of a hearing officer was a procedural defect that would necessarily imply the invalidity of the revocation of good time credits); *Melendez v. Costello*, No. 12-CV-6226, 2013 WL 5937052, at *6 (W.D.N.Y. Nov. 1, 2013) (finding that a claim that the hearing officer was biased and pre-judged the plaintiff's guilt would necessarily imply the invalidity of the plaintiff's conviction). Similarly, "were the Court to find that Defendant's SOTP policy, which required Plaintiff to forgo his earned and future [g]ood [t]ime [c]redits, was arbitrary, discriminatory, or unconstitutional punishment, it would necessarily imply [] the invalidity of his continued confinement beyond the date of his conditional release." (Op. 13 (citing *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *6–7 (S.D.N.Y. Dec. 19, 2017) (finding due process and Eighth Amendment claims barred by *Heck* where the plaintiff argued that the defendants "unconstitutionally delayed his condition release" by failing to provide transitional services and

housing); *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at *4 (E.D.N.Y. July 16, 2007) (same)).)

Plaintiff's claims that he was unaware that he was appearing before the TAC upon charges of misbehavior and was unable to defend himself because he did not receive a misconduct report or recommendation are also barred by *Edwards* because a finding in Plaintiff's favor on these alleged procedural defects would "call into question the lawfulness of the plaintiff's continued confinement," *Heck*, 512 U.S. 483. This is particularly the case because Plaintiff alleges not only that he did not receive notice of any alleged misconduct, but also that the TAC's determination was not backed by a rule violation or alleged misconduct in the first place. (*See* Am. Compl. 5 ("D[efendant] via the . . . TAC[] rev[oked] [Plaintiff's good time credits] for no rule violation or [m]isbehavior pursuant to the provisions and in accordance with [New York] Corr[ection] Laws §§ 803 and 805 . . . ."), 6 ("[P]laintiff committed no rule violations[] and[] had no misbehavior reports[] that could be considered bad behavior to warrant the []wanton taking of [P]laintiff's earned good time credits.").) *See Edwards*, 520 U.S. at 646 (determining that the plaintiff's claim that he was "completely denied the opportunity to put on a defense" would "if established, necessarily imply the invalidity of the deprivation of his good-time credits"); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (noting that had the revocation of the plaintiff's good time credits not been overturned, the plaintiff's procedural challenge, including that the plaintiff received inadequate notice of the charges against him, would have "necessarily . . . implicated the invalidity of the loss of his good[]time credits" (citation omitted)); *Riddick v. Semple*, No. 18-CV-313, 2019 WL 203118, at *2–3 (D. Conn. Jan. 15, 2019) (determining that the plaintiff's allegations, including that he was punished for violating "vague and overbroad prison rules" for which he was inadequately noticed, would "call[] into

question" the disciplinary finding at issue); *Alexander v. Selsky*, No. 02-CV-0589, 2004 WL 941803, at *3 (W.D.N.Y. Mar. 24, 2004) (determining that the plaintiff's claims that he was denied the right to view certain pieces of evidence, including unredacted relevant reports, would, if successful, "have an effect on the duration of his overall confinement"); *Garcia v. Payne*, No. 97-CV-880, 1998 WL 50207, at *3 (S.D.N.Y. Feb. 9, 1998) (finding that claimed due process violations, including the failure to provide written documentation of evidence against the plaintiff and denial of the opportunity to challenge that evidence, were "sufficiently serious" to be barred by *Edwards*).

However, given that this is Plaintiff's first time alleging a procedural defect with the TAC Hearing, and that, under *Edwards*, only those claims regarding procedures that would "*necessarily . . .* imply the invalidity of the judgment," 520 U.S. 645 (emphasis added), are impermissible, Plaintiff may amend his Amended Complaint to the extent he seeks to bring claims related to alleged procedural defects at the TAC Hearing that would not necessarily invalidate the revocation of his good time credits—such as, for example, the fact that he did not receive a document prior to the hearing that sufficiently set forth the facts and evidence against him, *see id.* at 649–50 (Ginsburg, J., concurring) (clarifying that "the failure of prison official[s] . . . to specify what facts and evidence supported [a] finding of guilt . . . would not necessarily imply the invalidity of the deprivation of [the plaintiff's] good-time credits, and therefore is immediately cognizable under § 1983" (citations and quotation marks omitted)); *Brown v. Dep't of Corr. Servs.*, No. 09-CV-949, 2011 WL 2182775, at *6–8 (W.D.N.Y. June 2, 2011) (allowing the plaintiff to amend his complaint to allege certain procedural defects at a TAC hearing, including that the plaintiff did not have the opportunity to present certain evidence and that the plaintiff's hearing assistant failed to help him); *Pickett v. LeClaire*, No. 08-CV-7291,

2009 WL 3320676, at *2 (S.D.N.Y. Oct. 13, 2009) (finding that the plaintiff's claim that the TAC did not give him the opportunity to be heard would not necessarily lead to a finding that the TAC would have rewarded good time credits to the plaintiff); *Ahlers*, 2007 WL 2042794, at *4 (noting that the defendant's "mere failure to provide written notice" of decisions regarding the suitability of proposed residences "did not itself prolong [the plaintiff's] confinement").

Finally, even if Plaintiff were to argue that certain of his procedural due process claims would not necessarily call into question the validity of his confinement—specifically that he did not receive a final order from Annucci setting forth the reasons for the TAC's determination, and that the determination he received was unsigned, (Am. Compl. 7)—these claims still fail for the reasons set forth below. *See infra* Section II.B.2.a.ii.

Thus, the Court grants Defendants' Motion as it relates to Plaintiff's First, Eighth, and Fourteenth Amendment claims related to the revocation of Plaintiff's good time credits and participation in the SOTP, as these claims are barred by *Heck*. However, this dismissal is without prejudice, as "[d]isposition of the case on *Heck* grounds . . . warrants only dismissal *without* prejudice, because the suit may be reinstituted should [P]laintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (emphasis in original) (quoting *Heck*, 512 U.S. at 487) (collecting cases). Further, to the extent that Plaintiff seeks to allege procedural defects related to the TAC that would not necessarily invalidate the revocation of his good time credits, Plaintiff may amend his Amended Complaint to do so.

## 2.  Constitutional Claims

Plaintiff's Amended Complaint raises claims under the First, Fifth, Eighth, and Fourteenth Amendments.  While *Heck* applies to some of Plaintiff's claims, it does not necessarily apply to all of them.  The Court addresses each alleged violation separately, to the extent necessary.

### a.  Fourteenth Amendment

Plaintiff claims that (1) he was forced to participate in the SOTP without any screening or need for such treatment, (Am. Compl. 2–4), and (2) he was deprived of good time credits without due process of law, (*id.* at 5–8).[9]  Plaintiff also alleges that his designation as a "sex offender" resulted in his stigmatization.  (*Id.* at 4; Pl.'s Mem. 1, 4–6.)

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a [property or] liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted).  By contrast, "[t]o state a claim for substantive due process a plaintiff must allege that: (1) he had a valid [liberty or property] interest and (2) 'defendants infringed on that . . . right in an arbitrary or irrational manner.'"  *Cherry v. New York Hous. Auth.*, No. 15-CV-6949, 2017 WL 4357344, at *28 (E.D.N.Y. Sept. 29, 2017) (quoting

---

[9] Plaintiff also alleges that Defendants have "person[ally] harmed [him] by implementing [r]ules[,] . . . policies, and dire[ctives] that deprive . . . [P]laintiff [of] his substantive and procedural rights under the New York State and United States Constitutions" and that Annucci has "continued to implement sanctions against . . . [P]laintiff after being informed by . . . [P]laintiff that he is in violation of the law."  (Am. Compl. 7.)  However, Plaintiff does not specify to which rules, policies, directives, and additional sanctions he is referring, and to the extent that Plaintiff raises additional claims in documents beyond his Amended Complaint, the Court does not consider them here.  (Op. 24–25 ("[The Amended Complaint] must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.").)  *See Agu*, 2010 WL 5186839, at *5 n.8 (finding that certain of a pro se plaintiff's claims failed because those claims were not raised in the amended complaint).

20

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014)). "Substantive due process protects [individuals] against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect' or 'ill-advised.'" *Catanzaro v. Weiden*, 140 F.3d 91, 95 (2d Cir. 1998) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)).

### i. SOTP Participation

As in his original Complaint, Plaintiff alleges that he was forced to participate in the SOTP even though he was not "screened, evaluated, and identified as having a need for treatment . . . nor diagnosed with a mental illness to be [referred] to the [SOTP]," in violation of his substantive and procedural due process rights. (Am. Compl. 2 (emphasis omitted).) As discussed above, this claim is barred by *Heck*, as a finding in Plaintiff's favor would necessarily imply that the revocation of his good time credits, which was based on his failure to participate in the SOTP, was invalid. *See supra* Section II.B.1. However, Plaintiff's claim also fails on the merits. First, Plaintiff continues to base this claim on an incorrect reading of New York Correction Law § 622, and thus has not cured the deficiencies that existed in his original Complaint. (Op. 17–18.)[10] As the Court previously discussed, (*id.*), § 622 requires DOCCS to make an SOTP available to inmates who are serving sentences for felony sex offenses "and are

---

[10] Plaintiff claims that "[t]his Court's prior decision . . . miscons[trued] the [C]omplaint[.] [P]laintiff's claims are not based on DOCCS not following its own rules and regulations but[] the [c]onstitutional right to refuse medical treatment and[] DOCCS's infringement on [P]laintiff's constitutional right to refuse medical treatment." (Pl.'s Mem. 5.) However, Plaintiff's Amended Complaint plainly alleges both that Defendants acted in violation of § 622, (Am. Compl. 2 ("The Defendants . . . appl[ied] this mental [health] treatment to [Plaintiff] without the protection of due process as mandated in [§ 622], i.e., [] the inmate shall be screened, evaluated, and[] identified as having a need for treatment." (emphasis omitted)), 4 ("Sullivan has failed to operate and administrate the [SOTP] in accordance with the provision contained in [§ 622].")), and that Defendants violated Plaintiff's right to refuse medical treatment. Thus, the Court addresses both claims herein.

identified as having a need for such program in accordance with [§§ 803 and 805 of Chapter 43 of the Correction Law]."  N.Y. Corr. Law § 622(1).  Together, §§ 803 and 805 stand for the proposition that an inmate serving an indeterminate sentence must be assigned to "a work and treatment program as soon as practicable" upon entry into DOCCS custody, *id.* § 805, and that the provision of good time credits to that inmate can be awarded for "progress and achievement in an assigned treatment program" or can be "withheld, forfeited, or canceled . . . for . . . failure to perform properly in the . . . program assigned," *id.* § 803(1)(a).  As this Court previously found, "[t]hese provisions state nothing about requiring screening or demonstrating medical need for an SOTP."  (Op. 18 (record citation, footnote, and quotation marks omitted).)  Plaintiff also cites to § 622(5) in support of his position, (Am. Compl. 3), which states that any inmate convicted of a felony sex offense committed to DOCCS custody "on or after the effective date of [the statute]"—that is, April 13, 2007—must be screened "as soon as practicable" for the "need for sex offender treatment while in prison," N.Y. Corr. Law § 622(5).  However, Plaintiff was committed to DOCCS custody in 1989 and as such, this provision does not apply to him.  (*See* DOCCS Profile.)  Further, despite Plaintiff's allegation that Sullivan had "no documentation of [P]laintiff's condition . . . to substantiate exposing . . . [P]laintiff" to the SOTP, (Am. Compl. 4), and that § 622 "says nothing about the crime being the criteria for participation in [SOTP]," (*id.*), as an inmate serving a sentence for a felony sex offense, (*see* DOCCS Profile), Plaintiff plainly falls within the population to whom an SOTP must be made available under § 622.[11, 12]

---

[11] Plaintiff relatedly claims that § 622 does not give Annucci authority to assign inmates to the SOTP, and he does not have authority to treat the mentally ill.  (Am. Compl. 2–4.)  Instead, according to Plaintiff, Annucci's "unlawful intrusion into the medical treatment of inmates shocks the [conscience]" and constitutes an abuse of authority.  (*Id.* at 4.)  Additionally, by allowing Annucci to be involved in the assignment of inmates to the SOTP, Plaintiff alleges that Sullivan "failed [in] her duties to operate and administrate the [SOTP]."  (*Id.* at 3.)  Plaintiff claims that the Court previously misconstrued § 622 because it is "not a DOCCS program law,

Moreover, although a "person has a constitutionally protected liberty interest in refusing unwanted medical treatment," *Cruzan v. Dir., Mo. Dep' of Health*, 497 U.S. 261, 278 (1990), and the Second Circuit has recognized that "prisoners retain a Fourteenth Amendment right to refuse medical treatment," *Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *6 (S.D.N.Y. Jan. 16, 2020) (citing *Pabon v. Wright*, 459 F.3d 241, 251 (2d Cir. 2006)), as the Court previously found, Plaintiff continues to acknowledge that he in fact consented to participate in the SOTP, (*see* Op. 23; *see also* Am. Compl. 5 ("Plaintiff appeared before the TAC and was . . . counseled to . . . participate in the [SOTP] . . . [and] [P]laintiff consented to go, and subsequently

---

it[] [is] a medical procedure law in DOCCS operated and administrated by the OMH and . . . Sullivan." (Pl.'s Mem. 5.)

However, § 622 specifically tasks DOCCS, of which Annucci is the Acting Commissioner, with "mak[ing] available a sex offender treatment program for those inmates who are serving sentences for felony sex offenses . . . and are identified as having a need for such program in accordance with [§§ 803 and 805]." N.Y. Corr. Law § 622(1). Further, § 622 requires DOCCS to "make such treatment programs available sufficiently in advance of the time of the inmate's consideration by the case review team . . . so as to allow the inmate to complete the treatment program prior to that time." *Id.* Here, it appears that the SOTP was made available to Plaintiff based on the offense for which he is serving his sentence. (Pl.'s Grievance.) Thus, the Court finds no basis for Plaintiff's claim that Annucci is wrongfully involved in assigning inmates who meet the criteria of § 622 to the SOTP.

Additionally, to the extent that Plaintiff alleges that Defendants failed to follow certain state laws or prison regulations, (Am. Compl. 2–8), as the Court previously stated, alleged violations of Defendants' failure to follow state laws or prison regulations do not violate due process, (Op. 18). *See Golian v. N.Y. City Admin. for Children Servs.*, 282 F. Supp. 3d 718, 727 (S.D.N.Y. 2017) ("The mere failure to follow state law does not violate substantive due process." (footnote omitted) (citing *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010)); *Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'" (alteration in original) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990))).

[12] Plaintiff also argues that § 622 cannot apply to him because it was enacted on April 13, 2007. (Pl.'s Mem. 6.) However, § 622 directs DOCCS to make the SOTP available to inmates "who are serving sentences for felony sex offenses," which Plaintiff was as of April 2007, and does not appear to limit the SOTP to inmates serving such sentences after the date of the statute's enactment. N.Y. Corr. Law § 622(1).

was removed for failure to be treated.")).  Plaintiff also still does not dispute that he had the opportunity to decline to participate in the program; in fact, Plaintiff alleges that he did decline to participate prior to his ultimate consent.  (Op. 23; Am. Compl. 3 ("[P]laintiff refused to go to the [SOTP] without due process . . . ."); Program Refusal Form.)  Further, even though Plaintiff classifies the SOTP as a form of "medical treatment," "he alleges no facts describing what sort of [medical] treatment he was forced to undergo," (Op. 24), besides a general statement that the harm included "mental mind altering treatment" and that because Plaintiff "is not a doctor of mental health[,] [he could] in no way . . . describe the treatment given to him," (Pl.'s Mem. 5). Even without these concessions, district courts in the Second Circuit have found that when a plaintiff has "a valid conviction for a sex offense," this "satisfies any due process rights the prisoner has in avoiding mandatory treatment." *Miller v. Annucci*, No. 19-CV-30, 2019 WL 2370295, at *12 (N.D.N.Y. June 5, 2019) (citations omitted); *see also Mercer v. Sullivan*, No. 18-CV-1148, 2018 WL 6787159, at *5 (N.D.N.Y. Dec. 26, 2018) ("[The] [p]laintiff was convicted of a sex offense, thus, [the] [p]laintiff does not have a liberty interest in being free from participation in a sex offender treatment program." (citation omitted)), *reconsideration denied*, 2019 WL 569074 (N.D.N.Y. Feb. 12, 2019); *Rheaume v. Pallito*, No. 11-CV-72, 2011 WL 6934821, at *6 (D. Vt. Nov. 28, 2011) (finding that because sex abuse programming "clearly b[ore] a rational relation to legitimate penological objectives," requiring the plaintiff to participate in the programming "did not involve a liberty interest, and therefore did not deny him of any due process rights" (citations omitted)), *adopted by* 2011 WL 6936201 (D. Vt. Dec. 30, 2011); *Blake v. Fischer*, No. 09-CV-266, 2010 WL 2522198, at *13 (N.D.N.Y. Mar. 5, 2010) (finding that the plaintiff's participation in the SOTP "was not arbitrary, conscience-shocking, or oppressive, but rather was rationally related to a legitimate penological purpose"), *adopted by*

2010 WL 2521978 (N.D.N.Y. June 15, 2010); *cf. Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) (finding that inmates had no constitutionally protected liberty interest in avoiding an internal security classification that could affect eligibility for rehabilitative programs). Thus, Plaintiff has not demonstrated substantive or procedural due process violations with respect to his right to refuse participation in the SOTP.

Plaintiff also claims that Defendants "have stigmatized his institutional records," (Am. Compl. 4); that his "institutional records have been contaminated with unlawful entries due to his unlawful designation as a [s]ex [o]ffender," (Pl.'s Mem. 1); and that he suffers from stigmas, such as being called "sex offender" by others, (*id.* at 5). Plaintiff further alleges that he was "never designated a [s]ex [o]ffender by [OMH] and was subjected to . . . [s]ex [o]ffender treatment by the staff of [OMH] without documentation of any illness." (*Id.* at 4.) According to Plaintiff, "sex offender status is a [mental] health designation . . . made after being screened, assessed, evaluated[,] and diagnosed as such by the [OMH]." (*Id.* at 6.) Plaintiff appears to be asserting a "stigma-plus" claim based on his classification as a sex offender and, construed liberally, may also assert a claim that he was designated as a sex offender without due process. Given that Defendants fail to address this claim in any capacity in their Memorandum, the Court will not dismiss this claim here because "it is not sufficiently argued by Defendants, who are represented by counsel and attempting to dismiss a pro se [Amended] Complaint." *Whitley v. Bowden*, No. 17-CV-3564, 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018) (citation and quotation marks omitted); *see also Siosin v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (per curiam) ("Perhaps counsel . . . intends that we form an argument for him, by looking into the record to document the 'facts' posited in his 'statement of the case,' and then examining various combinations of these facts in the light of the legal doctrines he later mentions. But that

is simply not our job, at least in a counseled case."); *Am. Tissue, Inc. v. DLJ Merch. Banking Partners, II, L.P.*, No. 03-CV-6913, 2006 WL 1084392, at *6 (S.D.N.Y. Apr. 20, 2006) (dismissing claims with prejudice because the party's brief "fail[ed] to address with any seriousness the legal sufficiency of those claims").  However, Defendants are free to raise arguments against this claim at a later date.

ii.  Good Time Credit Revocation

Plaintiff raises substantive and procedural due process claims under the Fourteenth Amendment as to the June 22, 2016 TAC Hearing that resulted in the revocation of his good time credits.  (Am. Compl. 5–8.)  Although a prisoner has a protected liberty interest in good time credits if the credits have already properly vested under state law, *see Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), Plaintiff does not sufficiently claim that the revocation of his good time credits for failure to participate in the SOTP was so "arbitrary or irrational" that it violated his substantive due process rights.[13]  Despite stating that his good time credits were revoked without any "misbehavior or rule violations," as a "[retaliatory] and revengeful abuse of authority," (Am. Compl. 5–6), and in violation of § 803(5), Plaintiff fails to recognize that § 803(1)(a) "explicitly provides that refusal to participate in an SOTP is a relevant consideration in the decision to revoke accrued [g]ood [t]ime [c]redits," (Op. 17 (citation removed)).  *See* N.Y. Corr. Law § 803(1)(a) (stating that good time credits "may be withheld, forfeited[,] or canceled in whole or in part for . . . failure to perform properly in the . . . program assigned").  Here, Plaintiff alleges that he refused to participate in the SOTP, and that he was ultimately removed for failure to be treated.  (Am. Compl. 5.)  Further, the TAC Report attached to Plaintiff's Amended Complaint

---

[13] Plaintiff also claims that his "property" was taken without due process.  (Am. Compl. 8.)  However, as discussed, Plaintiff has a liberty, and not necessarily a property, interest in vested good time credits.  *See Wolff*, 418 U.S. at 557.

states that revocation of Plaintiff's good time credits was recommended because of "[SOTP] refusals dated 9/4/13, 12/23/13, 9/22/14[, and] 12/31/15," and that reconsideration of the decision would be granted upon completion of the SOTP.  (*Id.* Ex. C ("TAC Report") (Dkt. No. 36).)  Thus, even if this claim was not barred by *Heck*, the revocation of Plaintiff's good time credits for failure to complete the SOTP would not constitute "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Harlen Assocs v. Inc. Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (citation omitted); *see also Hirsch v. Suffolk County*, No. 08-CV-2660, 2015 WL 1275461, at *11 (E.D.N.Y. Mar. 18, 2015) (finding, on a motion for summary judgment, that the plaintiff was not deprived of a liberty interest in good time credits because, inter alia, the plaintiff refused to enter a sexual offender treatment program), *aff'd*, 684. F. App'x 53 (2d Cir. 2017).[14]

As explained, *supra* Section II.B.1, Plaintiff also alleges a number of procedural defects with respect to the TAC Hearing.  Due process in the context of a disciplinary action against an inmate entitles the inmate to "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a

---

[14] Plaintiff also states that the TAC conducted an unauthorized hearing and is not a disciplinary body, comparing it to the adjustment committee that revoked the plaintiff's good time credits in *Wolff*.  (Pl.'s Mem 2.)  However, Plaintiff's Amended Complaint and the documents appended to it do not support an argument that the TAC exceeded its authority.  Indeed, the TAC appears to have acted in accordance with the procedures generally set forth under New York law, as, after a hearing, the TAC "recommend[ed] [the amount of time] to be withheld," N.Y. Comp. Codes R. & Regs. tit. 7 § 261.4(h), which was then signed and confirmed by the superintendent, (TAC Report).  Moreover, courts have recognized that hearings before the TAC prior to revocation of good time credits constitute sufficient due process.  *See Hirsch v. Desmond*, No. 08-CV-2660, 2013 WL 494614, at *7 (E.D.N.Y. Feb. 7, 2013) (finding that the plaintiff was afforded sufficient due process when, inter alia, he had a hearing before the TAC before his good time credits were withheld).  Plaintiff cites *McGinnis v. Royster*, 410 U.S. 263 (1973), in support of his argument that the TAC is not a disciplinary body, but *McGinnis* related to the constitutionality of a New York statute related to the denial of good time credit toward parole eligibility for certain state prisoners, and did not address the lawfulness or function of the TAC.  *See generally id.*

fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 563–67).

With respect to Plaintiff's claim that he was not given a written statement of the TAC's recommendation, and that the document he did receive was unsigned by Annucci, (Am. Compl. 7–8), the Court agrees with Defendants that these claims are not actionable, (*see* Defs.' Mem. 7). While Plaintiff states that he did not receive a "final order" from Annucci, or the reasons for the TAC's determination, he also claims that he was "given a new time computation with the loss of all good time credits (earned)" and later references this report, attaching it to his Amended Complaint. (Am. Compl. 5, 7–8; TAC Report.) The TAC Report appears to set forth the reasons for the TAC's determination, as it lists the dates that Plaintiff refused to participate in the SOTP. (*Id.*) Additionally, the fact that Plaintiff's version of the report is not signed by Annucci does not rise to the level of a constitutional violation. *See Holland*, 197 F. Supp. 3d at 549 ("An alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'" (alteration in original) (quoting *Russell*, 910 F.2d at 78 n.1)); *Parra v. Fischer*, No. 11-CV-6518, 2012 WL 3069952, at *6 (W.D.N.Y. July 27, 2012) (finding that, when the petitioner alleged that his misbehavior report was unsigned by a corrections officer, the petitioner had "at most . . . alleged violations of state statutory or administrative law").

However, to the extent Plaintiff claims that he was not given proper notice of the charges against him and that the TAC was biased against him, these allegations, if true, may rise to the level of a due process violation. Plaintiff claims that he "was not told that the TAC was a

punitive body in DOCCS, and that [he] was appearing before a judicial body on charges of misbehavior." (Am. Compl. 5.) He also claims that he "received no reports of misconduct or rule violations, or[] [a] Superintendent hearing," that he "was not informed of any recommendation of any time loss, or earned good time credits to defend against such threat," and that the TAC pre-judged his case. (*Id.* at 5, 7.) "Due process requires that prison officials give an accused inmate written notice of the charges against him twenty-four hours prior to conducting a disciplinary hearing," and that an accused is entitled to "a fair and impartial hearing officer." *Sira*, 380 F.3d at 69–70 (citing *Wolff*, 418 U.S. at 564). Moreover, under New York State law, when conducting a TAC Hearing regarding a recommendation to withhold good time credits, a formal notice of such hearing with written specifications as to the reasoning for the potential withholding must be delivered to an inmate at least 48 hours prior to the hearing. *See* N.Y. Comp. Codes R. & Regs. tit. 7 § 261.4(b). However, to the extent Plaintiff states a procedural due process claim with respect to the TAC Hearing, it is barred by *Heck* and *Edwards* and is therefore dismissed without prejudice. *See supra* Section II.B.1.

### b. Eighth Amendment

As in the original Complaint, Plaintiff alleges that his Eighth Amendment rights were violated by his forced participation in the SOTP, which constituted medical treatment that he did not need. (*See* Am. Compl. 2.) Construed liberally, Plaintiff also raises an Eighth Amendment conditions of confinement claim with respect to sanctions that Annucci allegedly imposed after Plaintiff's refusal to participate in the SOTP. (*See id.* at 3.)

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam) (citing, inter alia, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). "Although the Constitution does not require

'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In such cases, a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (quoting *Farmer*, 511 U.S. at 834 (italics omitted)); *see also Garcia v. Fischer*, No. 13-CV-8196, 2016 WL 297729, at *4 (S.D.N.Y. Jan. 22, 2016) (same). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125 (citations omitted); *see also Seymore v. Dep't of Corr. Servs.,* No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that '[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a "conditions-of-confinement claim."'" (alteration in original) (citation omitted)). To meet the subjective element, a plaintiff must show that the defendant "acted with more than mere negligence," and instead knew of and disregarded an "excessive risk to inmate health or safety." *Walker,* 717 F.3d at 125 (citations and quotation marks omitted). Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).

With respect to Plaintiff's allegedly forced participation in the SOTP, Plaintiff has not cured many of the deficiencies in his original Complaint. (*See* Op. 22–24.) Throughout the Amended Complaint, Plaintiff emphasizes that he was "assigned to" participate in the SOTP

program, and refers to it as "[f]orced [m]edical treatment" which was "so punitive in its consequences as to transform the treatment into punishment." (Am. Compl. 2; *see also id.* at 3 (calling the assignment of inmates to the SOTP "cruel[,] . . . unusual[,] and medically unethical").) However, as the Court previously found, and as is detailed above, *see supra* Section II.b.2.a.i, these claims remain insufficient because Plaintiff acknowledges that he actually consented to participate in the SOTP. (*See* Op. 23–24; *see also* Am. Compl. 5 ("Plaintiff appeared before the TAC and was . . . counseled to . . . participate in the [SOTP] . . . [and] [P]laintiff consented to go, and[] subsequently was removed for failure to be treated.").) Plaintiff also still does not dispute that he had the opportunity to decline to participate in the program. (Op. 23; Am. Compl. 3 ("[P]laintiff refused to go to the [SOTP] without due process . . . ."); Program Refusal Form.) *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (finding that in order to prevail on an Eighth Amendment claim, plaintiff must establish that "it is contrary to current standards of decency for anyone to be so exposed *against his will*" to the complained-of conditions (emphasis added)); *Jones v. Goord*, 435 F. Supp. 2d 221, 238 (S.D.N.Y. 2006) (finding that the inmates' "voluntary accumulation of personal property" in small cells did not violate the Eighth Amendment because the clutter was caused by "the inmates' *own desire* for personal property and their refusal to use out-of-cell storage . . . , not any 'punishment' imposed by [the] defendants" (emphasis added)); *see also Haas v. Weiner*, 765 F.2d 123, 124 (8th Cir. 1985) ("[C]onduct in which one voluntarily engages can hardly be said to violate the Eighth Amendment.").

Moreover, although Plaintiff alleges that he has suffered from headaches, backaches, stomach pains, sleeplessness, stress, and anxiety, (Am. Compl. 4), such ailments, without more, fail to satisfy the objective requirement that Plaintiff suffered from a "condition of urgency . . .

that may produce death, degeneration, or extreme pain" that "threatened his health or safety." *Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *7–8 (S.D.N.Y. Dec. 16, 2015) (finding that the plaintiff's complaints of headaches, stress, and anguish were insufficient to satisfy the objective prong of an Eighth Amendment claim); *see also Knight v. Mun. Corp.*, No. 14-CV-3783, 2016 WL 4017208, at *5 (S.D.N.Y. May 27, 2016) (determining that although "sleep is critical to human existence," the plaintiff "provide[d] no facts to suggest that [his] deprivation was sufficiently serious" (citations and quotation marks omitted)), *adopted by* 2018 WL 4030632 (S.D.N.Y. July 26, 2016); *Flemming v. Wright*, No. 11-CV-804, 2013 WL 4804493, at *10 (N.D.N.Y. Sept. 9, 2013) (finding that general allegations of back pain were insufficient to state a claim for deliberate indifference); *Read v. Town of Suffern Police Dep't*, No. 10-CV-9042, 2013 WL 3193413, at *6 n.5 (S.D.N.Y. June 25, 2013) (noting that the "[p]laintiff's anxiety attacks were likely not sufficiently serious to satisfy the objective component of the 'deliberate indifference' analysis"), *appeal dismissed*, No. 13-3065 (2d Cir. Oct. 20, 2013); *Mortimer Excell v. Fischer*, No. 08-CV-945, 2009 WL 3111711, at *4 (N.D.N.Y. Sept. 24, 2009) ("[C]onclusory allegations of heart, chest, and stomach pain, without more, do not satisfy the objective prong of the Eighth Amendment." (collecting cases)). Plaintiff also does not allege any facts describing what sort of treatment he was forced to undergo, (Op. 24), and, despite general claims that Annucci does not have authority to assign inmates to "mental health treatment" and that Sullivan "failed [in] her duties to operate and administrate the [SOTP]," (Am. Compl. 2–3), does not allege that Defendants knew of and disregarded an "excessive risk to inmate health or safety," *Walker*, 717 F.3d at 125 (citation and quotation marks omitted).

Plaintiff also claims that Annucci imposed additional sanctions on him for refusing to participate in the SOTP, which may be construed as the basis of an Eighth Amendment

conditions of confinement claim.  (Am. Compl. 3.)[15]  Specifically, Plaintiff claims that because

he refused to participate in the SOTP "without due process," Annucci removed him from his

assigned program in food service, revoked his housing privilege of a single room, reduced his

pay grade until he agreed to participate in the SOTP, and transferred him to a facility far from his

family.  (*Id.*)  These allegations do not constitute a basis for an Eighth Amendment conditions of

confinement claim.  *See La Bounty v. Adler*, 933 F.2d 121, 124 (2d Cir. 1991) (holding that an

inmate's exclusion from the prison's maintenance electrician program did not establish an Eighth

Amendment violation); *White v. Williams*, No. 12-CV-1775, 2014 WL 1672634, at *2 (N.D.N.Y.

Apr. 28, 2014) ("[T]he law is clear that an inmate does not have a right to be confined to the

prison of his own choosing or to a particular type of housing." (citations omitted)), *aff'd sub*

*nom. White v. Clark*, 588 F. App'x 87 (2d Cir. 2015); *Bussey v. Phillips*, 419 F. Supp. 2d 569,

586 (S.D.N.Y. 2006) (finding that permanent removal from a job assignment did not arise to the

type of conduct implicating the Eighth Amendment).  Additionally, Plaintiff has not satisfied

either the objective or subjective elements of an Eighth Amendment claim with respect to these

sanctions.  Accordingly, the Court dismisses Plaintiff's Eighth Amendment claims in their

entirety.  However, because this is the first adjudication of Plaintiff's claims regarding the

---

[15] Plaintiff does not specify when Annucci imposed these sanctions, but the Court assumes that it occurred separately from the revocation of Plaintiff's good time credits.  To the extent that these sanctions were imposed at the same time as the revocation of good time credits, Plaintiff would be able to proceed with claims based on these sanctions only if "he [was] willing to forgo once and for all any challenge to any sanctions that affect[ed] the duration of his confinement."  *Peralta*, 467 F.3d at 104 (emphasis omitted) (finding that, when a disciplinary proceeding that results in "mixed sanctions," or sanctions that affect both the duration of imprisonment and the conditions thereof, a plaintiff must waive all claims related to disciplinary sanctions affecting the duration of the confinement for the plaintiff to proceed with due process claims challenging sanctions affecting the conditions of confinement).  Plaintiff has not provided such a waiver here, nor does such a waiver appear to be applicable to these sanctions.
.

additional sanctions imposed by Annucci, and it does not appear that a *Peralta* waiver is required, the Court dismisses this claim without prejudice.

### c. First Amendment

Construed liberally, Plaintiff also raises retaliation claims against Annucci under the First Amendment. He alleges that Annucci "moved to deprive" Plaintiff of good time credits through the TAC as a "[retaliatory] and revengeful abuse of authority" in order to "authorize retaliation and vengeance against the [P]laintiff" for his refusal of "mental health treatment," (Am. Compl. 6–7; Pl.'s Mem. 3), and that Annucci punished Plaintiff for "refus[ing] to go to the [SOTP] without due process" by imposing certain sanctions, (Am. Compl. 3; Pl.'s Mem. 5).

As stated, Plaintiff's retaliation claim with respect to the TAC Hearing and deprivation of good time credits is plainly barred by *Heck*, as a finding that the Hearing and subsequent revocation of good time credits were acts of retaliation would necessarily invalidate the TAC's determination. *See supra* Section II.b.1; *see also Burris v. Nassau Cty. Dist. Attorney*, No. 14-CV-5540, 2017 WL 9485714, at *7 (E.D.N.Y. Jan. 12, 2017) (dismissing the plaintiff's claims of malicious prosecution, deprivation of the right to a fair trial, conspiracy, and retaliation as barred by *Heck* because the claims "implicat[ed] the invalidity of his convictions") (collecting cases), *adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017); *Smolen*, 2013 WL 4054596, at *3 (finding that the plaintiff's claim that he was retaliated against for exercising First Amendment rights through the loss of good time credits and lengthened period of incarceration was barred by *Heck*); *Duamutef v. Morris*, 956 F. Supp. 1112, 1115–18 (S.D.N.Y. 1997) (dismissing, inter alia, claims under § 1983 for malicious prosecution, retaliation, and conspiracy as barred by *Heck*, when the plaintiff's underlying conviction had not been overturned).

However, Defendants fail to address Plaintiff's other retaliation claim—that Annucci invoked sanctions against Plaintiff in retaliation for his refusal to go to the SOTP without due process. (Am. Compl. 3, Pl.'s Mem. 5.) These sanctions included "remov[al] from [Plaintiff's] assigned program in [f]ood [s]ervice, [a change in Plaintiff's] housing privilege of a single room into a dorm setting, reduc[tion] [of] his pay grade to grade one . . . until [] [P]laintiff consent[ed] to participate in the [SOTP], and . . . transfer[] [of] [P]laintiff far away from his family." (*Id.*) Because Defendants have not addressed this claim, the Court will not dismiss it here. *See Whitley*, 2018 WL 2170313, at *12. However, Defendants are free to argue that this claim should be dismissed in a subsequent motion.

### d. Fifth Amendment

Plaintiff refers to Fifth Amendment violations throughout the Amended Complaint, (*see* Am. Compl. 1–2, 4, 7–8), but he has not plausibly alleged such a violation. Although Plaintiff originally alleged that Annucci violated his Fifth Amendment rights by forcing him to admit responsibility for a crime as a condition of release, (Pl.'s Mem. in Opp'n to Defs.' First Motion To Dismiss 5 (Dkt. No. 25)), the Court dismissed this claim, (Op. 18–22), and Plaintiff does not re-raise it in his Amended Complaint, (*see generally* Am. Compl.). Moreover, insofar as Plaintiff attempts to assert a due process claim under the Fifth Amendment, this claim fails. "[T]he Fifth Amendment applies only to proceedings by the Federal Government." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 (S.D.N.Y. Mar. 30, 2018) (alterations and quotation marks omitted) (quoting *United States v. Ng*, 699 F.2d 63, 69 (2d Cir. 1983)). Thus, because Plaintiff is seeking to recover from the actions of state, not federal, actors, Plaintiff's Fifth Amendment claim is dismissed. As this is the second adjudication on the merits of such a claim, this dismissal is with prejudice. *See Denny v. Barber*,

576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to a "third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (citations, alterations, and quotation marks omitted)).[16, 17]

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted in part and denied in part. Plaintiff's Fourteenth Amendment claim regarding his status as a sex offender and First Amendment claim regarding the imposition of sanctions besides the revocation of good time credits by Annucci, (Am. Compl. 3), are not dismissed. Plaintiff's Fifth Amendment claim is dismissed with prejudice. Certain of Plaintiff's First, Eighth, and Fourteenth Amendment claims are dismissed under *Heck* without prejudice to reinstitution of these claims in the event that Plaintiff's conviction or incarceration is invalidated by "executive order, . . . a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Amaker*, 179 F.3d at 52 (collecting cases). Additionally, Plaintiff's Eighth Amendment claim regarding other sanctions imposed by Annucci, (Am. Compl. 3), and Fourteenth Amendment claim regarding procedural defects, such as notice, that would not

---

[16] Plaintiff also appears to raise certain claims under New York State law. For example, Plaintiff alleges that Defendants applied § 622 to Plaintiff "in violation of the [e]x [p]ost [f]acto [c]lause of the New York State Constitution," (Am. Compl. 2), and that Sullivan "was negligent and failed to supervise her responsibilities in the operation of the [SOTP]," (*id.* at 4). Because Defendants do not address these claims in their Memorandum, the Court does not address them here.

[17] The Court does not address Defendants' alternative argument that they are entitled to qualified immunity, because with respect to the claims raised by Defendants, the Court has addressed those claims on the merits. (Defs.' Mem. 13–14.) With respect to the claims not raised by Defendants in their Memorandum that have not been dismissed, the Court declines to examine at this time whether qualified immunity applies.

necessarily invalidate the revocation of his good time credits are dismissed without prejudice. If Plaintiff wishes to file a third amended complaint alleging additional facts with respect to these Eighth and Fourteenth Amendment claims, and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Plaintiff is advised that the third amended complaint will replace, not supplement, all prior complaints. The third amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. Failure to timely file a third amended complaint may result in dismissal of Plaintiff's remaining claims with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion. (Dkt. No. 52.)

The Clerk of the Court is also respectfully directed to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED: March 27, 2020
    White Plains, New York

             KENNETH M. KARAS
             UNITED STATES DISTRICT JUDGE