UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERRY ADAMS,

                              Plaintiff,

              v.

ANTHONY ANNUCCI, *et al.*,

                              Defendants.

No. 17-CV-3794 (KMK)

OPINION & ORDER

Appearances:

Jerry Adams
Malone, NY
*Pro Se Plaintiff*

David Cheng, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

 Pro se Plaintiff Jerry Adams ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1983, against Acting Commissioner of the New York Department of Corrections and

Community Supervision ("DOCCS") Anthony Annucci ("Annucci," or "Commissioner") and

Commissioner of the New York State Office of Mental Health ("OMH") Ann Marie T. Sullivan

("Sullivan"; with Annucci, "Defendants").  (Am. Compl. (Dkt. No. 36).)[1]  Plaintiff alleges that

Defendants violated his rights under the Fourteenth Amendment of the United States

Constitution by designating him as a sex offender and that Annucci violated his rights under the

---

[1] Plaintiff indicates that Defendants are sued only in their "personal capacit[ies]."  (Am. Compl. 1.)

First Amendment by sanctioning him for his failure to participate in a Sex Offender Counseling and Treatment Program ("SOCTP").  (*See generally id.*)

Before the Court is Defendants' Motion for Summary Judgment ("Motion").  (*See* Dec. in Support of Mot. (Dkt. No. 126).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Defendants' 56.1 Statement in Support of their Motion ("Defs.' 56.1") pursuant to Local Civil Rule 56.1.  (*See* Defs.' 56.1 (Dkt. No. 128).) Additionally, where appropriate, the Court cites directly to the admissible evidence submitted by the Parties.  The facts as described below are in dispute to the extent indicated.

Plaintiff entered DOCCS's system in 1989, after being convicted of several crimes including Sodomy in the First Degree.  (Defs.' 56.1 ¶ 3.)  Plaintiff alleged that he was never screened or otherwise examined by OMH to determine whether he was a sex offender or if SOCTP was appropriate.  (Am. Compl. ¶ 2.)  However, in March 2012, Plaintiff was assessed by OMH's Sex Offender Evaluation Unit using the Computerized Criminal History Based Risk Instrument.  (Defs.' 56.1 ¶ 4.)  OMH's assessment deemed Plaintiff as "needing low risk sex offender programming."  (*Id.* ¶ 5.)

Plaintiff was incarcerated at Woodbourne Correctional Facility ("Woodbourne") from October 26, 2015 until July 19, 2016.  (*Id.* ¶ 6.)  Plaintiff was housed in the same cell for the entirety of that timeframe.  (*Id.* ¶ 7.)

In June 2016, Plaintiff was instructed to attend SOCTP but refused to go.  (*Id*. ¶ 11.) Plaintiff alleged in his Amended Complaint that as a result of his refusal to go to the program, Annucci "[invoked] sanctions against [Plaintiff]," including removing him from his assigned

program in food services, revoking his single room housing "privilege" and moving him to a "dorm setting," reducing his pay grade until he agreed to participate in the program, and transferring him to a facility far from his family.  (Am. Compl. 3.)  However, Plaintiff's inmate program assignment shows that his pay and job title were not changed upon his refusal to attend SOCTP in June 2016.  (Cheng Dec. Ex. D, at 1–2 (Dkt. No. 126).)[2]

Plaintiff subsequently agreed to attend SOCTP and was transferred to Gowanda Correctional facility to participate in the program on July 19, 2016, as there was no residential SOCTP available at Woodbourne.  (Defs.' 56.1 ¶¶ 12–13.)  Plaintiff's pay was temporarily increased before his transfer to Gowanda.  (*Id*. ¶ 10.)  Plaintiff arrived at Gowanda for SOCTP on July 21, 2016.  (*Id*. ¶ 14.)

Plaintiff filed a grievance regarding his attending SOCTP on July 28, 2016.  (*Id*. ¶ 15.)  In Plaintiff's original grievance, he raised the issue that he could not participate meaningfully in SOCTP by taking full responsibility for his crime because he maintained his innocence in the underlying crime and was appealing the verdict.  (Seguin Dec. Ex. 4, at 6 (Dkt. No. 129).)  Plaintiff further wrote that he was being "sanctioned" for maintaining his innocence because he was subject to the loss of his good time credits if he was removed from the program for failure to accept responsibility.  (*Id*. at 7.)  Plaintiff's grievance was denied in August 2016, because he qualified for required attendance at SOCTP due to his "sentence for a specified offense as a sexually motivated felony under Penal Law [§] 130.91," and because after investigation, it was determined that Plaintiff had "not provided any compelling reason to substantiate [a] change to

---

[2] From October 2015 through June 2016, Plaintiff was employed as a Porter I and his pay was $0.10 per hour.  (Cheng Dec. Ex. D, at 2.)  His pay rate was increased to $0.1583 from July 17, 2016 to July 19, 2016, then decreased to $0.075 from August 1, 2016 to August 7, 2016, and then increased to $0.1583 from August 8, 2016 to October 16, 2016.  (*Id*. at 1.)

the current policy." (*Id*. at 4, 8.)  When Plaintiff appealed this grievance to the Central Office

Review Committee ("CORC") after the grievance was denied by the superintendent, he argued

that he had never been diagnosed or assessed by anyone from OMH pursuant to Correction Law

§ 622, which he claimed required that inmates be assessed for their need for programs rather than

being assigned on the basis of their sex offense conviction.  (*Id*. at 8–10.)[3]  CORC considered

both Plaintiff's original claim regarding his inability to participate in SOCTP because he

maintained his innocence and his argument about Correction Law § 622, denying the grievance

on both grounds.  (*Id*. at 1.)  The CORC found that Plaintiff was "appropriately referred to the

[SOCTP] based on his instant offense, and that the referral was approved by the Office of

Guidance and Counseling." (*Id*.)  CORC also noted that he was assessed by OMH in accordance

with Correction Law § 622 in 2012.  (*Id*.)

---

[3] Under New York Correction Law § 622, DOCCS must "make available a sex offender treatment program for those inmates who are serving sentences for felony sex offenses . . . and are identified as having a need for such program in accordance with [§§ 803] and [805] of [Chapter 43]."  N.Y. Corr. Law § 622(1).  The first cited provision—§ 803—provides that every inmate serving an indeterminate sentence of imprisonment at a DOCCS facility "may receive time allowance against the maximum term of his . . . sentence not to exceed one-third of the maximum term imposed by the court."  *Id*. § 803(1)(b).  These allowances are also called "[g]ood behavior time" or "good time."  N.Y. Penal Law § 70.30(4)(a).  "Such allowances may be granted for good behavior . . . or progress and achievement in an assigned treatment program, and may be withheld, forfeited, or canceled in whole or in part for bad behavior . . . or failure to perform properly in the . . . program assigned."  *Id*. § 803(1)(a).  Subject to certain conditions, an inmate, upon his request, must be "conditionally released" from incarceration when his total "good time" equals the unserved portion of the maximum of his indeterminate sentence—in other words, one-third.  N.Y. Penal Law § 70.40(b).  The second provision cited in § 622—§ 805—provides that inmates serving indeterminate sentences "shall be assigned a work and treatment program as soon as practicable," and that the DOCCS Commissioner must "review the inmate's institutional record to determine whether he has complied with the assigned program" no more than two months prior to the inmate's eligibility for parole to determine if the inmate merits a certificate of earned eligibility.  N.Y. Corr. Law § 805.  Correction Law § 622 additionally states that any inmate committed to DOCCS custody "on or after the effective date of [§ 622] [, April 13, 2007,] for a felony sex offense" must, "as soon as practicable, be initially assessed by staff of the [O]ffice of [M]ental [H]ealth" regarding their "risk of violent sexual recidivism and . . . need for sex offender treatment while in prison."  *Id*. § 622(5).

At an unknown point in time, Plaintiff sent a letter to Annucci challenging his placement in SOCTP, which was referred to a subordinate commissioner.  (Cheng Dec. Ex. A, at 36–38 (Dkt. No. 126).)

Plaintiff was discharged from SOCTP on October 7, 2016, principally for "minimal to no participation" in the program tasks.  (Defs.' 56.1 ¶ 23.)  Plaintiff was released to parole supervision on August 2, 2021.  (*Id.* ¶ 24.)

B.  Procedural History

Plaintiff commenced the instant Action on March 27, 2017 in the Western District of New York, naming Annucci as the only Defendant.  (*See* Compl. (Dkt. No. 1).)  The case was transferred to this Court on May 19, 2017.  (Dkt. No. 4.)

On November 10, 2017, Annucci filed a Motion To Dismiss.  (Dkt. No. 23.)  Although Plaintiff moved to dismiss the New York Attorney General's Office from the case because of an alleged conflict of interest, (Dkt. No. 24), the Court denied the motion, but considered Plaintiff's accompanying Declaration in opposition to Annucci's Motion To Dismiss, (Dkt. Nos. 25–26). Annucci filed a Reply on January 10, 2018, (Dkt. No. 27), and Plaintiff filed a Sur-Reply on January 22, 2018, (Dkt. No. 28).

On September 25, 2018, the Court issued an Opinion & Order dismissing Plaintiff's claims without prejudice and allowing Plaintiff 30 days to file an Amended Complaint.  (Op. & Order ("Op.") 24–25 (Dkt. No. 33).)  After receiving an extension from the Court, Plaintiff filed his Amended Complaint on November 16, 2018, adding Sullivan as a Defendant.  (Dkt. Nos. 34– 35; Am. Compl.)

On April 12, 2019, Defendants filed a motion to dismiss.  (Dkt. No. 53.)  Plaintiff filed an Opposition on May 3, 2019.  (Dkt. No. 57.)  Defendants filed a Reply on May 31, 2019.  (Dkt.

No. 58).)  On March 27, 2020, the Court issued an Opinion & Order, denying Defendants'

motion as to Plaintiff's Fourteenth Amendment claim regarding his status as a sex offender and

First Amendment claim regarding the imposition of sanctions besides the revocation of good

time credits by Annucci, dismissing Plaintiff's Fifth Amendment claim with prejudice, and

dismissing certain of Plaintiff's First, Eighth, and Fourteenth Amendment claims without

prejudice.  (Second Op. & Order ("Second Op.") (Dkt. No. 60).)

Defendants filed the instant Motion for Summary Judgment on April 25, 2022.  (*See* Not.

of Mot.; Decl. of David H. Chen in Supp. Of Mot. (Dkt. No. 126); Mem. of Law in Supp. of

Mot. ("Defs.' Mem.") (Dkt. No. 128).)  Plaintiff submitted his Opposition on June 30, 2022.

(*See* Mem. of Law for Reply to Mot. ("Pl.'s Mem.") (Dkt. No. 135).)  Defendants replied on July

27, 2022.  (*See* Reply to Mot. ("Defs.' Reply Mem.") (Dkt. No. 136).)  Plaintiff filed multiple

Sur-Replies without leave of the Court on August 19, 2022, October 6, 2022, and November 28,

2022.  (Dkt. Nos. 137, 140, 143.) [4]  Defendants replied to each of Plaintiff's Sur-Replies on

September 16, 2022, October 17, 2022, and on December 15, 2022.  (Dkt. Nos. 138, 142, 144.)

---

[4] "Allowing parties to submit sur-replies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs." *Kapiti v. Kelly*, No. 07-CV-3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) (citation and quotation marks omitted).  The general rule is that supplemental filings require leave of the court.  *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (holding that the plaintiff could have "sought to file a responsive sur-reply" in district court); *Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) ("[The defendant] did not move the district court for leave to file a sur-reply to respond to [the plaintiff's] evidence."); *Sevilla v. Perez*, No. 15-CV-3528, 2016 WL 5372792, at *2 n.5 (E.D.N.Y. Sept. 26, 2016) ("[The plaintiff] did not seek leave to file the sur-reply and the court did not grant permission for the filing of a sur-reply; this contravenes the general principle that supplemental filings require leave of the court."); *Endo Pharms. Inc. v. Amneal Pharms., LLC*, Nos. 12-CV-8115, 12-CV-8060, 12-CV-8317, 12-CV-8985, 13-CV-435, 13-CV-436, 13-CV-3288, 13-CV-4343, 13-CV-8597, 2016 WL 1732751, at *9 (S.D.N.Y. Apr. 29, 2016) ("It is beyond dispute that the decision to permit a litigant to submit a [sur-reply] is a matter left to the court's discretion[.]" (citation omitted)); *Kapiti*, 2008 WL 754686, at *1 n.1 ("[T]he decision to permit a litigant to submit a [sur-reply] is a matter left to the Court's

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d

---

discretion, since neither the Federal Rules of Civil Procedure nor the Local Civil Rules of [the] court authorize litigants to file [sur-replies]."). District courts have discretion to decide whether to strike or permit a litigant's sur-reply. *See Levin v. Johnson & Johnson,* No. 16-CV-6631, 2022 WL 198501, at *1 (E.D.N.Y. Jan. 21, 2022) ("[I]t is within the discretion of the district court to strike a sur-reply when the filing litigant failed to seek or receive permission to file the sur reply."); *Endo Pharms. Inc.*, 2016 WL 1732751, at *9 (striking a supplemental filing where the plaintiff "neither sought nor received permission from the court to file a [sur-reply]"). Because Plaintiff failed to seek leave to file his Sur-Replies, the Court, in its discretion, will not consider them.

114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would

be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848 F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).  Moreover, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[ ]made in light of the opposing party's pro se status" (italics omitted)).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . .  are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe*

*Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

### B.  Analysis

Plaintiff's remaining claims are that he was (1) subjected to "stigma plus" defamation based on his classification as a sex offender, (2) designated a sex offender without due process, and (3) suffered retaliation by Annucci in the form of employment and housing changes because he refused to attend SOCTP.  (*See generally* Am. Compl.; Second Op.)  Defendants argue that Plaintiff failed to properly exhaust administrative remedies, that Plaintiff has failed to show Defendants' personal involvement in any constitutional violation, that there is no dispute of material fact as to any elements of Plaintiff's remaining claims, that Defendants are entitled to qualified immunity, and that any claims for injunctive relief are moot.  (*See generally* Defs.' Mem.)  Plaintiff argues that he did properly exhaust, that Defendants were personally involved in violating his constitutional rights, namely that Defendants did not comply with Correction Law § 622 and conspired to "usurp" it, that he "was defamed by . . . Annucci designating me as a sex offender and placing me in treatment without due process," and that Defendants are not entitled to qualified immunity.  (*See generally* Pl.'s Mem.)

#### 1.  Exhaustion

##### a.  Applicable Law

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory':

10

An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001). Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly*. . . .  Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and quotation marks omitted) (emphasis in original).

To satisfy the exhaustion requirements, a prisoner "must exhaust all levels" of DOCCS's "Inmate Grievance Program" ("IGP").  *Little v. Mun. Corp., City of N.Y.*, No. 12-CV-5851, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017).  The IGP provides for a three-step grievance process.  *See* 7 N.Y.C.R.R. § 701 *et seq.*; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))).  Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence.  *See* 7 N.Y.C.R.R. § 701.5(a)(1).  Once filed, the representatives of the IGRC have up to 16 calendar days to resolve the grievance informally.  *Id.* § 701.5(b)(1).  If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii).  The

11

second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the IGRC's written response, although the appealing party can seek an exception to the time limit. *See id.* § 701.5(c)(1).  The third and final step is to appeal the superintendent's decision to the CORC, which the prisoner must do within seven days of the superintendent's written response to the grievance.  *Id.* § 701.5(d)(1)(i).  Here, too, an inmate may request an exception to the time limit.  *See id.*  Given the aforementioned requirement to exhaust all levels of administrative remedies, *see Little*, 2017 WL 1184326, at *11, "only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted," *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

However, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642.  As the Supreme Court has explained "the exhaustion requirement hinges on the "'availab[ility]'" of administrative remedies. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.  First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id.* at 643–44.  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage

of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.  The

Second Circuit has noted "that the three circumstances discussed in *Ross* do not appear to be

exhaustive," but has declined to "opine on what other circumstances might render an otherwise

available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2.

Nonetheless, these three circumstances "guide the Court's inquiry." *Khudan v. Lee*, No. 12-CV-

8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

      b.  Application

Defendants argue that Plaintiff failed to exhaust available administrative remedies

regarding his claims against Annucci.[5]  There is no dispute that Plaintiff filed and fully appealed

a grievance related to his participation in SOCTP.  (Defs.' Mem. 9; Pl.'s Mem. 5.)[6]  However, the

Parties dispute whether the grievance Plaintiff filed regarding his participation in SOCTP was

procedurally proper and specific enough to exhaust the claims he presents at this stage.  (Defs.'

Mem. 8–11; Pl.'s Mem. 5.)  Defendants argue that Plaintiff's assertions in his appeal to the

CORC regarding his lack of diagnosis and assessment by OMH pursuant to Correction Law

§ 622 were not properly grieved as they were not included in his original grievance.  (Defs.'

Mem. 9–10.)  Plaintiff argues that there "is no provision saying one cannot add to a grievance or

the CORC cannot decide a[n] added claim, or added evidence it sees fit to consider."  (Pl.'s

---

[5] OMH actions are not grievable, so Defendants' arguments regarding exhaustion do not apply to the claims against Sullivan.  *See* 7 N.Y.C.R.R. § 701.3(f).

[6] Plaintiff filed a different grievance regarding SOCTP that was resolved on February 19, 2014.  (Seguin Decl. Ex. 2.)  "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  Plaintiff commenced this action on March 27, 2017, more than three years after the 2014 grievance was resolved.  Accordingly, any constitutional violations grieved under the 2014 grievance would be barred under the three-year statute of limitations.

Mem. 5.)  Accordingly, this Court must determine whether Plaintiff's claim regarding his lack of assessment by OMH was properly grieved as required by DOCCS' procedures.  *See Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir. 2009) (noting that the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures" (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007))); *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1285417, at *2 (S.D.N.Y. Mar. 28, 2013) ("The boundaries of proper exhaustion are defined by the grievance requirements at the prison." (citation and quotation marks omitted)).

Defendants have not pointed to any DOCCS directive or case that stands for the proposition that additional arguments relevant to a filed grievance cannot be properly added and considered at the CORC stage.  (Defs.' Mem. 8–11; Defs.' Reply Mem. 3–5.)  Upon review of DOCCS Directive 4040, Inmate Grievance Program, this Court finds no prohibition on submitting additional arguments on appeal to the CORC.  (Seguin Decl. Ex. 1.)  The Directive only requires that grievances "should contain a concise, specific description of the problem and the action requested."  (*Id.* at 7.)  Because Plaintiff's CORC appeal regarding the purported lack of OMH assessment allowed the "agency [to] address[] the issues on the merits" and is not in clear violation of DOCCS procedures, the Court considers the information contained in the initial grievance and appeal as properly grieved.  *Woodford*, 548 U.S. at 90 (noting that proper exhaustion means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)" (emphasis, quotation marks, and citation omitted)).[7]

---

[7] The Court notes that it has found multiple cases where CORC has not responded substantively to new facts raised on appeal, instead responding with the statement: "all relevant information must be presented at the time of filing in order for a proper investigation to be conducted at the facility level."  *See, e.g.*, *Coleman v. Cuomo*, No. 18-CV-390, 2019 WL 6829613, at *4 (N.D.N.Y. Dec. 13, 2019), *report and recommendation adopted sub nom.*

Next, Defendants argue that even considering the information Plaintiff included in his CORC appeal, his grievance raised "nothing about retaliatory transfers or pay reductions and nothing about being improperly designated as a sex offender, whether as without due process or defamatory" and therefore these claims against Annucci were not exhausted.  (Defs.' Mem. 10–11.)

"The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (alterations, citation, and quotation marks omitted).  Therefore, to properly exhaust administrative remedies under the PRLA, an inmate "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."  *Id.*; *see also Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (holding that a grievance "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it").  However, a "grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need to do is object intelligibly to some asserted shortcoming."  *Johnson*, 380 F.3d at 697.  "[I]nmates navigating prison administrative

---

*Coleman v. Racette*, 2020 WL 896785 (N.D.N.Y. Feb. 24, 2020); *Munger v. Cahill*, No. 16-CV-728, 2018 WL 4635709, at *7 (N.D.N.Y. July 23, 2018), *report and recommendation adopted*, 2018 WL 4179451 (N.D.N.Y. Aug. 31, 2018), *aff'd*, 792 F. App'x 110 (2d Cir. 2020) (summary order); *Gibson v. Rosati*, No. 13-CV-503, 2017 WL 1534891, at *3 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017).  However, this Court has not found such an assertion in DOCCS Directive 4040 and cannot determine from the above cases whether the above statement constituted a global CORC policy at the time Plaintiff appealed the denial of his grievance, especially given that CORC *did* respond to the additional arguments Plaintiff raised in his appeal in this instance.  Indeed, that CORC did address the additional arguments Plaintiff raised in his appeal indicates that unlike in the above cases, CORC did not consider Plaintiff's additional allegations raised on appeal to be outside of the scope of his grievance filed at the facility level.

procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading." *Id*. While courts have "found it appropriate to afford pro se inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (italics and citation omitted).

Accordingly, courts find non-exhaustion when a grievance does not include allegations that would notify the defendants of the existence of the factual matters at issue. *See Gonzalez v. Coburn*, No. 16-CV-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) (holding that plaintiff did not exhaust his retaliation claim where he did not allege any facts suggesting that corrections officers acted in retaliation); *Sosa v. Lantz*, No. 09-CV-869, 2013 WL 4441523, at *5-6 (D. Conn. Aug. 14, 2013) (holding that the plaintiff had exhausted his Eighth Amendment claim complaining of overcrowding as to inmate access to jobs and rehabilitation programs, because those issues were specifically grieved, but had not exhausted the effect of overcrowding on insufficient staff, food, and medicine because those issues were not included in the grievance); *see also Singh v. Lynch*, 460 Fed. Appx. 45, 47 (2d Cir. 2012) (summary order) (finding non-exhaustion because the plaintiff's grievance against a corrections officer did not include an allegation regarding assault and therefore did not alert officials to that specific claim).

While Plaintiff did assert in his grievances that he had been "sanctioned" for not participating effectively in the program through the loss of good time credits, nowhere did he grieve his loss of work, pay, or housing which he claims occurred upon his initial refusal to participate in SOCTP. (Seguin Dec. Ex. 4.) As this Court explained in its Second Opinion & Order at the motion to dismiss phase, Plaintiff's retaliation claim is cabined to his loss of work, pay, or housing. *Adams v. Annucci*, No. 17-CV-3794, 2020 WL 1489787, at *14 (S.D.N.Y. Mar.

27, 2020).  Accordingly, because Plaintiff did not include any information about retaliation in response to his initial refusal resulting in his loss of work, pay, or housing in his grievance that would have allowed prison officials to investigate and take appropriate responsive measures to address the aforementioned injuries, Plaintiff has not exhausted his retaliation claim.  *See Lewis v. Cook et al.*, No. 19-CV-1454, 2021 WL 4477392, at *7–8 (D. Conn. Sept. 30, 2021) (holding that plaintiff "did not exhaust his administrative remedies with regards to his claims about the defendant's deliberate indifference to any conditions other than [those described in the grievances]" when the plaintiff had submitted grievances "stating that he was unable to access the law library, have visitors, or make phone calls," but did not describe other conditions described in his complaint such as "eating in a dirty cell; having no power; being limited to three showers a week; stripping before leaving the cell; being confined to the cell for twenty-three hours a day on weekdays and all weekend; being handcuffed and tethered when outside the cell; and never being able to clean his cell"); *Brown v. Austin*, No. 05-CV-9443, 2009 WL 613316, at *5 (S.D.N.Y. Mar. 4, 2009) (holding that, although plaintiff's excessive force claim was exhausted, his retaliation claim was not exhausted because his grievance did not place the prison on notice of allegedly retaliatory conduct or provide necessary information to investigate his complaints); *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005) ("[T]he mere fact that plaintiff filed some grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." (emphasis omitted)).

Furthermore, there is no evidence that that the grievance process was unavailable to Plaintiff as it pertains to his retaliation claim, and Plaintiff does not claim otherwise.  (*See generally* Pl.'s Mem.)  That Plaintiff filed a grievance regarding his participation in SOCTP and

its effect on his good time credits, which he fully exhausted, demonstrates that the grievance process was available to Plaintiff. *See Whittington v. Ponte*, No. 16-CV-1152, 2020 WL 2750372, at *9 (S.D.N.Y. May 27, 2020) (holding that the fact that plaintiff filed grievances contemporaneously with the challenged incidents "cuts strongly against any theory of unavailability").

Read liberally, however, Plaintiff's grievance can be interpreted as grieving the fact that he was improperly designated as a sex offender—the fact that gives rise to his due process and stigma plus claims. *Walker v. Schult*, No. 11-CV-0287, 2014 WL 7014674, at *7 (N.D.N.Y. Dec. 11, 2014) (noting that a grievance need only "present[] the relevant factual circumstances giving rise to a potential claim" (citation and quotation marks omitted)); *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) ("[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a [property or] liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." (citation and quotation marks omitted)); *Barzilay v. City of N.Y.*, No. 20-CV-4452, 2022 WL 2657169, at *37 (S.D.N.Y. July 8, 2022) ("To establish a 'stigma plus' claim, a plaintiff must show (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" (quoting *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010)); *Cherry v. N.Y. Hous. Auth.*, No. 15-CV-6949, 2017 WL 4357344, at *28 (E.D.N.Y. Sept. 29, 2017) ("To state a claim for substantive due process a plaintiff must allege that: (1) he had a valid [liberty or property] interest and (2) 'defendants infringed on that . . . right in an arbitrary or irrational manner.'" (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 545 (2d Cir. 2014))). Indeed, Plaintiff claims in his

grievance that he was assigned to SOCTP without a diagnosis or assessment from OMH, that he has a criminal record going back 50 years "with not one other sex offense" and that he was innocent of the sex crime he was convicted of—claims which, liberally construed, imply he was inappropriately designated as a sex offender.  (Seguin Dec. Ex. 4, at 6–10.)  While Plaintiff's grievance certainly could have been more specific, for instance by explicitly grieving that he was improperly designated as a sex offender, the Court holds that Plaintiff exhausted his due process and stigma plus claims, as "[t]here does not appear to be any reason to require a prisoner to present fully developed legal and factual claims at the administrative level."  *Booker v. Griffin*, No. 16-CV-72, 2019 WL 13163557, at *11 (S.D.N.Y. June 7, 2019) (citation and quotation marks omitted) (holding that plaintiff sufficiently grieved his deliberate indifference to medical needs claim when his grievance included the fact that his medical files failed to be transferred— he was not required to grieve that particular defendants intentionally failed to transfer his medical records), *on reconsideration in part*, 2019 WL 3423262 (S.D.N.Y. July 30, 2019); *Collins v. Goord*, 438 F. Supp. 2d 399, 414 (S.D.N.Y. 2006) (holding that plaintiff sufficiently exhausted his denial of access to the courts claim when he grieved a lack of access to pens which was sufficiently specific to satisfy the notice pleading exhaustion requirement—plaintiff did not need to grieve that he was prejudiced in a legal proceeding or that the lack of pens was a result of deliberate and malicious conduct by defendants).

### 2.  Personal Involvement

Defendants argue Plaintiff's remaining claims against Sullivan and Annucci fail for lack of personal involvement.  (Defs.' Mem. 5–7.)  "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4

(S.D.N.Y. July 8, 2022) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  "[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citation and quotation marks omitted); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at \*15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against" a particular defendant (quotation marks and citation omitted)).  Accordingly, "a plaintiff may not rely on a special test for supervisory liability" instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d 616–18.

In his Opposition, Plaintiff describes Annucci's personal involvement as "institut[ing] a program in DOCCS which does not comply with" Correction Law § 622 and Plaintiff contends that Annucci "[h]ad no authority to assign [] [P]laintiff to a medical procedure" and that he "punished the [P]laintiff for invoking his constitutional right over his body."  (Pl.'s Mem. 4.)  Plaintiff appears to be arguing that SOCTP is a "medical procedure" and under Correction Law § 622 those with sex offense convictions must be "screen[ed], assess[ed], [and] evaluat[ed]" by Sullivan and "designated a sex offender suffering from some form of [m]ental disorder or [m]ental abnormality" and only then "referred to the treatment" because of assessed need.  (*Id*. at 4–8.)  He argues that Annucci violated Correction Law § 622 by "establishing his own sex offender program and [D]efendant Sullivan did not perform her duty to protect [] [Plaintiff's] constitutional rights under the color of law she allowed her co-defendant to assign inmates to mental health treatment."  (*Id*.)  Plaintiff also argues he was "defamed by . . . Annucci designating me as a sex offender and placing me in treatment without due process."  (*Id*. at 7.)

20

Plaintiff further states that "[D]efendants conspired together" to "save the cost of having the [P]laintiff and other inmates screened, assessed, evaluated and, diagnosed as sex offenders." (*Id.* at 2.)

Plaintiff's theory of personal involvement in his Opposition is fairly consistent with his articulated theory at his deposition.  At Plaintiff's deposition, he stated that "Commissioner Annucci had no authority in Correctional Law [§] 622, that Commissioner Sullivan was supposed to be—she was the commissioner of the program but she allowed Commissioner Annucci to assign people to therapy." (Cheng Dec. Ex. A, at 43:16–20.)  When asked how he knew that Sullivan allowed Annucci to assign people to therapy, Plaintiff responded "[t]hat's how I was assigned. I was assigned to the program. I was diagnosed to the program. What the law states that I have to have a need to . . . receive therapy and I will be referred to the program. That's what the law states." (*Id.* at 43:23–44:3.)  Plaintiff additionally explained that Defendants had knowledge of the allegations in his Amended Complaint because Annucci "wrote the rules for the program and Ms. Sullivan she's the commissioner of the office of mental health who's supposed to be running the program." (*Id.* at 36:4–7.)

Plaintiff has not adduced any evidence that Annucci or Sullivan were personally involved in Plaintiff's designation as a sex offender with or without due process.[8]  "[T]he burden is on a plaintiff to present sufficient evidence to demonstrate the personal involvement of each of the defendants, and it has been recognized that a defendant's motion for summary judgment must be granted in the absence of such evidence." *Lewis v. City of N.Y.*, No. 07-CV-7258, 2010 WL

---

[8] Plaintiff has also failed to present any evidence that Annucci was personally involved in any retaliation against Plaintiff by depriving him of employment, pay, or housing.  Accordingly had Plaintiff exhausted his retaliation claim, the claim would still fail because Plaintiff has not demonstrated Annucci's personal involvement.

2836112, at *4 (S.D.N.Y. June 29, 2010) (citation and quotation marks omitted); *see also Taylor v. Santana*, No. 05-CV-1860, 2007 WL 737485, at *7 (S.D.N.Y. Mar. 6, 2007), *aff'd sub nom. Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80 (2d Cir. 2009) ("Defendants' personal involvement is an essential element of a § 1983 claim, which plaintiff would bear the burden of proving at trial. . . .  Because plaintiff has failed to make the requisite showing, summary judgment in favor of defendants is appropriate.").  Plaintiff's conclusory statement that Annucci "defamed" him by "designating me as a sex offender" is plainly insufficient, as Plaintiff has not put forth any evidence that Annucci was personally involved in his designation as a sex offender.  A plaintiff cannot merely assert the involvement of high-ranking officials in designations and assignments to sufficiently demonstrate personal involvement.  *See Trapani v. Annucci*, No. 21-CV-0681, 2022 WL 7290107, at *13 (N.D.N.Y. June 21, 2022), *report and recommendation adopted*, 2022 WL 4008027 (N.D.N.Y. Sept. 1, 2022) (holding no personal involvement when plaintiff did not show that "Defendant Annucci was aware of or involved in any way with Plaintiff's punitive segregation assignment"); *Zielinski v. Annucci*, No. 17-CV-1087, 2019 WL 2479616, at *8 (N.D.N.Y. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1305826 (N.D.N.Y. Mar. 22, 2019) (holding no personal involvement when plaintiff did not show that "Annucci was personally involved in approving Clinton C.F.'s designation as a TV facility"); *Iqbal*, 556 U.S. at 680–81 (holding that it was "the conclusory nature of respondent's allegations" that Ashcroft was the "principal architect" of an "invidious policy" to subject prisoners to harsh conditions of confinement on account of race, national origin, or religion, and that Mueller was "instrumental" in adopting and executing it "rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth").  Indeed, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome [or

prevail on] a motion for summary judgment." *Perez v. de la Cruz*, No. 09-CV-264, 2013 WL

2641432, at *7 (S.D.N.Y. June 12, 2013) (alteration in original) (citation and quotation marks

omitted); *see also Bermudez v. City of N.Y.*, 790 F.3d 368, 373–74 (2d Cir. 2015) ("To defeat

summary judgment . . . non-moving parties . . .  may not rely on conclusory allegations or

unsubstantiated speculation." (first alteration in original) (citation and quotation marks

omitted)); *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 215 (S.D.N.Y.

2022), *on reconsideration in part*, No. 16-CV-740, 2022 WL 3018104 (S.D.N.Y. July 29, 2022)

("The non-moving party cannot defeat the motion by relying on the allegations in [its] pleading,

or on conclusory statements." (alteration in original) (quotation marks omitted)).  Plaintiff

additionally has not provided any evidence of any conspiracy or scheme on the part of Annucci

or Sullivan to deprive him of an assessment to save money—such statements are again wholly

conclusory.  Finally, any liability which Plaintiff attempts to assign Defendants on the basis that

"the doctrine of respondant superior does apply" is a misstatement of the law. (Pl.'s Mem.

4.)  Because a defendant must be personally involved in the alleged conduct to be liable under

§ 1983 "government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior." *Tangreti*, 983 F.3d 609, 616 (2d Cir.

2020) (citation, alteration, and quotation marks omitted).

The Court reiterates that Plaintiff continues to base his claim, and any semblance of

personal involvement on the part of Defendants, on an incorrect reading of New York Correction

Law § 622.  Plaintiff continues to argue that Annucci was personally involved because he

violated New York Correction Law § 622 by assigning Plaintiff to SOCTP without screening and

that Sullivan allowed Annucci to do so.[9]   New York Correction Law § 622(5) states that any

inmate convicted of a felony sex offense committed to DOCCS custody "on or after the effective

date of [the statute]"—that is, April 13, 2007—must be screened "as soon as practicable" for the

"need for sex offender treatment while in prison," N.Y. Corr. Law § 622(5).  However, Plaintiff

was committed to DOCCS custody in 1989 and as such, this provision does not apply to him.

Accordingly, the assertion that Annucci was personally involved because he "instituted a

[p]rogram in DOCCS which does not comply with" Correction Law § 622 on the basis that

Plaintiff was not screened prior to his assignment to SOCTP has no grounds.  (Pl.'s Mem. 4.)

Furthermore, the evidence presented in this case demonstrates that Plaintiff was in fact screened

by OMH in 2012 in accordance with Correction Law § 622, further undermining Plaintiff's

argument that Annucci was personally involved in assigning Plaintiff to SOCTP without OMH

assessment and that Sullivan allowed Annucci to do so.  (Seguin Dec. Ex. 4, at 1.)[10]

---

[9] A defendant can also be personally involved in a constitutional violation if he "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom." *Stone #1 v. Annucci*, No. 20-CV-1326, 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (citation and quotation marks omitted).  Plaintiff appears to invoke this theory of personal involvement in arguing that Annucci was personally involved because he "wrote the rules for the program" which Plaintiff contends violate New York Correction Law § 622.  (Cheng Dec. Ex. A, at 36:4–7.)

[10] The Court also reiterates that Plaintiff's claim that § 622 does not give Annucci authority to assign inmates to SOCTP, that Annucci does not have authority to provide medical treatment, and that Sullivan failed to prevent him from doing so has no basis.  (Am. Compl. 2–4.) As this Court has already explained, § 622 specifically tasks DOCCS, of which Annucci is the Acting Commissioner, with "mak[ing] available a sex offender treatment program for those inmates who are serving sentences for felony sex offenses . . . and are identified as having a need for such program in accordance with [§§ 803 and 805]."  N.Y. Corr. Law § 622(1).  Further, § 622 requires DOCCS to "make such treatment programs available sufficiently in advance of the time of the inmate's consideration by the case review team . . . so as to allow the inmate to complete the treatment program prior to that time."  *Id*.  Here, it appears that SOCTP was made available to Plaintiff based on the offense for which he is serving his sentence.  (Seguin Dec. Ex. 4, at 1.)  Thus, the Court finds no basis for Plaintiff's claim that Annucci is wrongfully involved in assigning inmates who meet the criteria of § 622 to SOCTP.

Plaintiff additionally testified that he sent a letter to Defendant Annucci challenging his placement in SOCTP, which was referred to a subordinate commissioner.  (Cheng Dec. Ex. A, at 36–38.)  However, "[t]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Leneau*, 2018 WL 566456, at *14–15 (citation and quotation marks omitted); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding DOCS Commissioner had no personal involvement when plaintiff wrote him two letters, one an appeal the Commissioner had referred to the prison superintendent for decision); *Allah v. Annucci*, No. 16-CV-1841, 2018 WL 4571679, at *6 (S.D.N.Y. Sept. 24, 2018) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (citation and quotation marks omitted)); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." (citation omitted)).

In the absence of any personal involvement in Plaintiff's designation as a sex offender by Annucci or Sullivan, Plaintiff's due process and stigma plus claims against them cannot survive. *Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) (dismissing claims against Annucci for failure to allege personal involvement when the plaintiff "offer[ed] no factual allegations suggesting that Annucci was present for, knew of, or even had any reason to know about the alleged" constitutional violation); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding personal involvement not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation (citation omitted)); *Lara-*

*Grimaldi v. Cnty. of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding personal involvement not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted" the violation).  Accordingly, all remaining claims against Defendants are dismissed.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 124), enter judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket, and close this case.

SO ORDERED.

Dated:   March 28, 2023
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

26